

FILED by MG D.C.
ELECTRONIC

**May. 01, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____ **09-60646 Civ-Cohn/Seltzer**

| | |
|---|---|
| CAROL D. SMITH, on Behalf of Herself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) **COMPLAINT – CLASS ACTION** ) ) |
| vs. | ) ) |
| WM. WRIGLEY, JR. COMPANY, | ) ) |
| Defendant. | ) ) **DEMAND FOR JURY TRIAL** ) |

Plaintiff Carol D. Smith ("Plaintiff") brings this action on behalf of herself and all others similarly situated against defendant Wm. Wrigley, Jr. Company ("Wrigley" or "Defendant"), and states:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Wrigley. Further, greater than two-thirds of the Class members reside in states other than the state in which Wrigley is a citizen.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

    (a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District;

    (b) does substantial business in this District; and

    (c) is subject to personal jurisdiction in this District.

## NATURE OF THE ACTION

3. This is a consumer rights and deceptive advertising action. Wrigley claims in its advertising, including on its package labels, that its Eclipse® gum brand is "scientifically proven to help kill the germs that cause bad breath" as a result of the "natural ingredient," Magnolia Bark Extract ("MBE"). This claim is false, deceptive and likely to mislead.

4. Further, these claims are not substantiated, and Wrigley failed to substantiate the claims at all times they were made, in violation of federal and state law.

5. Meanwhile, Wrigley has engaged in an extensive and comprehensive nationwide advertising campaign, spending millions of dollars to convey this deceptive message to consumers throughout the United States. Wrigley conveyed and continues to convey its deceptive claims about Eclipse® gum through a variety of media, including television, newspapers, magazines, direct mail, the Internet, point-of-sale displays, and on the product's labels and labeling. Each consumer who has purchased Eclipse® gum has been exposed to Wrigley's misleading advertising message multiple times.

6. As a result of this deceptive advertising campaign, Wrigley has elevated Eclipse® gum into one of the top sellers in the product category.

7. And as a result of the misleading messages conveyed through its campaign, Wrigley has been able to charge a price premium for Eclipse® gum over other chewing gum products, including other Wrigley chewing gum products.

8. Plaintiff brings this action on behalf of all persons who purchased, other than for resale, Eclipse® gum beginning on June 1, 2008, to halt the dissemination of the false and misleading advertising messages, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who purchased Eclipse® gum.

**PARTIES**

9. At all times relevant to this matter, Plaintiff Carol D. Smith resided and continues to reside in this District. During the class period, Plaintiff was exposed to and saw Wrigley's advertising claims and purchased Eclipse® gum in reliance on these claims.

- 2 -

3 of 18

10. Wrigley is incorporated in the State of Delaware and is headquartered in Chicago, Illinois. Wrigley is registered to do business in the State of Florida, and does business in the State of Florida. Wrigley promotes, markets, distributes and sells Eclipse® gum throughout the United States, including to tens of thousands of consumers in the State of Florida. Wrigley is a wholly owned corporate subsidiary of Mars, Incorporated, a corporation headquartered in McLean, Virginia. Wrigley is the largest gum company in the United States and worldwide. In 2007, Wrigley achieved net sales in excess of $5,000,000,000.

## FACTUAL ALLEGATIONS

11. In 1999, Wrigley launched its Eclipse® gum brand into the "intense pellet gum segment" of the chewing gum market. This market is a highly competitive one.

12. In an effort to reverse share declines in the United States, leverage its investments in marketing and research development, and ultimately "giv[e] consumers new reasons to chew Wrigley gum," in June 2008, Wrigley released a reformulated version of Eclipse® gum and touted it as "the first and only brand to include Magnolia Bark Extract, a natural ingredient scientifically proven to kill the germs that cause bad breath."

13. Since that time, Wrigley has made, and continues to make, the following marketing claims about Eclipse® gum in all of its advertising, including on the product label:

> Most other gums just mask bad breath. We kill the germs that cause it. New Eclipse now contains a natural ingredient that kills the germs that cause bad breath.
>
> Now with natural Germ killing* . . . Incredibly fresh breath. * Now Eclipse contains a natural ingredient, scientifically proven to help kill the germs that cause bad breath.
>
> Eclipse now contains a natural ingredient that kills the germs that cause bad breath.

14. The label on each package of Eclipse® gum substantially appears as follows:





15. Similarly, in its television commercials, Wrigley conveys the same message:

Announcer: "New Germ Killing Eclipse Gum. Advanced fresh breath, when you need it."

An individual is shown speaking to a man in very close proximity and his reaction is one of disgust as he turns away and hands the person a pack of Eclipse gum with MBE and says "seriously."

- 4 -

> Announcer: [Cutting to a shot of the Eclipse® gum package.] "Most other gums just mask bad breath. Now great tasting Eclipse has a great tasting ingredient that kills the germs that cause it."
>
> A woman is shown speaking to the two men in close proximity. As one of the men turns away in disgust she whispers "Sorry. I'm so sorry."
>
> Announcer: [Cutting to a shot of the Eclipse® gum package] "Now Eclipse gum kills germs. Advanced fresh breath . . . seriously."

16. This claim is false, misleading and likely to deceive the consuming public. Further, Wrigley does not have competent and reliable scientific evidence supporting this claim, let alone substantiation that the claim is "scientifically proven."

17. "Bad breath" or oral malodor is caused by oral bacteria referred to collectively as volatile sulfur compounds ("VSC"). It is commonly accepted that killing these "germs" will reduce or eliminate bad breath.

18. Wrigley acknowledges that the success of its chewing gum products is dependent upon "leveraging" its advertising message. In 2007, Wrigley infused $150 million into advertising and even established its own "Marketing College." Wrigley believes the effectiveness of marketing and labeling its chewing gum products, including Eclipse® gum, is what "fuel[s] velocity off store shelves."

19. Wrigley hires people to create "scientific proof" to substantiate Wrigley's claims. Wrigley and theses individuals work in concert to produce results which Wrigley then represents support its claims.

20. In 2006, Wrigley created the Wrigley Science Institute to fund purportedly independent research to "explore new benefits of chewing gum." Wrigley states that through the

- 5 -

Wrigley Science Institute research, the company is "giving consumers new reasons to chew Wrigley Gum and build [] category consumption."

21.     In furtherance of its fraudulent and deceptive scheme, Wrigley attempts to pass off approximately nine irrelevant or inadequate studies, claiming that they constitute "scientific proof." None of these studies, taken separately or in total, substantiate Wrigley's claims.

## THE TWO IN-HOUSE *EX VIVO* STUDIES

22.     Wrigley launched its false advertising campaign based on two *ex vivo* studies conducted by Wrigley, itself. At the time the studies were conducted, Wrigley had already planned the advertising campaign that is the subject of this action.

23.     In each of the *ex vivo* studies, the subjects chewed a compound for five minutes to stimulate saliva flow, after which time the subjects spit their saliva into test tubes. The saliva was added to two different MBE solutions, then transferred to plates from which a reduction in anaerobic and VCS bacteria could be determined.

24.     While the studies generally noted a reduction in the number of bacteria, neither contains any data on VSC bacteria and, therefore, neither recorded a decrease in VSC bacteria.

25.     Further, the two *ex vivo* studies failed to account for how much MBE would be swallowed, if any, to determine if there would be any interaction with VSC bacteria. In fact, Wrigley failed to validate whether its saliva examination would contain VSC bacteria, or otherwise simulate actual use.

## THE *IN VITRO* TESTING

26.     In October 2008, Wrigley conducted another in-house test. This one was conducted *in vitro*. In this test, five varieties of Eclipse® gum containing MBE, three varieties of Eclipse®

gum that did not contain MBE, and Dentyne ® Ice Peppermint Gum, which does not contain MBE, were compared.

27. Each of the gum varieties was dissolved into sterile water and each was dissolved in sterile water containing VSC bacteria.

28. In addition to many methodological and design flaws, the results failed to demonstrate any meaningful difference in gum containing MBE and gum that did not. In fact, in this flawed study, the Eclipse® gum containing MBE and the Eclipse® gum without MBE had a greater than 50% kill rate of VSC bacteria.

### THE APRIL, MAY AND DECEMBER 2008 *IN VIVO* STUDIES

29. In April, May and December 2008, Wrigley finally tested its claims with *in vivo* testing. To ensure favorable results, Wrigley purposely designed flawed studies.

30. For this study, the subjects chewed Eclipse® gum for five minutes, after which time they all spit into the same test tube and the level of all bacteria was determined.

31. This testing did not follow proper methodology. The *in vivo* testing did not gather the subjects' saliva before they chewed Eclipse® gum to compare it to saliva after they chewed Eclipse® gum. Nor did the testing identify saliva samples over the period of time during which the subjects chewed Eclipse® gum. Instead, the *in vivo* testing commingled the bacteria in the saliva samples since the subjects spit into the same test tube over a five minute period and thereby distorted any proper measurement for the actual rate at which bacteria were reduced. This test also failed to use a proper control.

32. For these and other reasons, the April, May and December 2008 *in vivo* testing does not constitute competent and reliable scientific evidence of Wrigley's claims about Eclipse® gum.

## THE 2007 GREENBERG STUDY

33. On its website, Wrigley represents that its claim is supported by a 2007 study, Michael Greenberg, *Compressed Mints and Chewing Gum Containing Magnolia Bark Extract Are Effective Against Bacteria Responsible for Oral Malodor*, 55 J. Agric. & Food Chem. 9465 (2007) ("Greenberg study").

34. The study tested saliva samples before and after the subjects were given MBE. The study sample size was scientifically flawed, as it was conducted on just nine people. Further, each of the nine was a Wrigley employee.

35. The Greenberg study found that gum with .067% MBE did not show statistically significant germ-kill compared to Eclipse® Winterfresh Gum, the placebo control which did not contain any MBE.

36. Eclipse® gum contains 42% less MBE than the gum tested in the Greenberg study (556 parts per million (ppm) compared to the 955 ppm). Therefore, if reliable and relevant, the Greenberg study actually indicates that Wrigley's claim is false.

37. Its relevance, however, is suspect. The composition of the MBE in Eclipse® gum is different than the composition of the MBE used in the Greenberg study. MBE consists of two substantive components – the compounds known as "magnolol" and "honokiol." The MBE used in the study contained 940 ppm of magnolol and 15 ppm of honokiol. Eclipse® gum, however, contains 450 ppm of magnolol and 106 ppm of honokiol.

## THE JANUARY 2009 HILL TOP STUDY

38. On its website, Wrigley represents that another study supports its claims. This study was not conducted until January 2009, and is known as the Hill Top Study.

39. This study purportedly demonstrated an odor reduction for subjects chewing Eclipse® gum at a five minute interval and then at a twenty minute interval.

40. However, this study suffers from flawed methodology. The study did not adequately employ a control. Therefore, the study's findings are useless.

41. Further, the odor evaluations were conducted while the subjects were still chewing Eclipse® gum, thereby invalidating the results.

## INDUSTRY SPONSORED WATCHDOG GROUP FOUND CLAIM DECEPTIVE

42. In April 2009, the National Advertising Division of The Council of Better Business Bureaus, Inc. (hereinafter, the "NAD") examined Wrigley's Eclipse® gum marketing claims and concluded it was deceptive. The NAD describes itself as the advertising industry's self-regulatory forum, whose purpose is to foster truth and accuracy in national advertising. After examining the claim and the claim substantiation, the NAD concluded that Wrigley's campaign:

> be discontinued or modified to indicate that there is emerging evidence as to MBE's germ killing capability without expressly or by implication communicating that there is credible scientific evidence that the gum has been proven to kill the germs that cause bad breath or provides fresh breath based on any germ killing capability. NAD also recommended that the commercials be discontinued because they expressly state "Most other gums just mask bad breath. We kill the germs that cause it" and that Eclipse gum with MBE delivers advanced fresh breath, messages that are not supported by the evidence in the record.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this lawsuit on behalf of herself and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All persons who purchased, other than for resale, Eclipse® gum between June 1, 2008 to the date Wrigley stops making the subject claim in its advertisements or the date notice is provided to the class, whichever is earlier. Excluded from the Class are the Defendant, its officers, directors, and employees.

44. ***Numerosity.*** The class consists of tens of thousands of consumers. Therefore, the members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiff. The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

45. ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Wrigley had adequate substantiation for its claims prior to making them;

(b) whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c) whether the alleged conduct constitutes violations of the laws asserted herein;

(d) whether Wrigley engaged in false or misleading advertising;

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(f) whether Plaintiff and Class members are entitled to an award of punitive damages; and

(g) whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

46.     ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class and Plaintiff has the same claims as those of the other Class members.

47.     ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

48.     ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant.  It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

- 11 -

12 of 18

## COUNT I

### For Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.*, On Behalf of Plaintiff and the Class

49. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

50. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* (the "Act"). The express purpose of the Act is to "protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

51. Plaintiff is a consumer as defined by Fla. Stat. §501.203. Eclipse® gum is a good within the meaning of the Act. Wrigley is engaged in trade or commerce within the meaning of the Act.

52. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

53. Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." Wrigley's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343. Further, FTC rules and regulations require that Wrigley have the same level of substantiation for its advertisements at the time they are made as it claimed in the

advertisement. Wrigley claims clinical and scientific proof, but does not have clinical or scientific proof.

54. Wrigley has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

55. Plaintiff and the Class have been aggrieved by Wrigley's unfair and deceptive practices in that they paid for Eclipse® gum.

56. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Wrigley, as more fully described herein.

57. Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

58. Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, punitive damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

59. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

60. Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Eclipse® gum. The terms of that contract include the promises and affirmations of fact made by Wrigley on its product labels and through its marketing campaign, as described above. This product labeling and advertising constitutes express

- 13 -

warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Wrigley on the other.

61. All conditions precedent to Wrigley's liability under this contract, including notice, have been performed by Plaintiff and the Class.

62. Wrigley breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product which could provide the promised benefits as described above.

63. As a result of Wrigley's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Eclipse® gum at issue.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of Wrigley's revenues to Plaintiff and the proposed Class members;

D. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E. Awarding Plaintiff and the Class punitive damages;

F. Ordering Wrigley to engage in a corrective advertising campaign;

G.      Awarding attorneys' fees and costs; and

H.      Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: May 1, 2009

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JONATHAN M. STEIN
Florida Bar No. 009784
CULLIN A. O'BRIEN
Florida Bar No. 597341

*/s/ JONATHAN M. STEIN*

JONATHAN M. STEIN

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
jstein@csgrr.com
cobrien@csgrr.com

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

- 15 -

                          BALKAN & PATTERSON, LLP
                          JOHN B. PATTERSON
Florida Bar No. 023930
ADAM M. BALKAN
Florida Bar No. 0044880
601 South Federal Highway, Suite 302
Boca Raton, FL 33432
Telephone: 561-750-9191
561/750-1574 (fax)
john@balkanpatterson.com
adam@balkanpatterson.com

Attorneys for Plaintiff and the Class

- 16 -

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
CAROL D. SMITH, on behalf of herself and all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff: **Broward County**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jonathan Stein, Coughlin Stoia Geller Rudman & Robbins LLP
120 E. Palmetto Park Road, Suite 500, Boca Raton, FL 33432
Telephone: 561/750-3000

## DEFENDANTS
WM. WRIGLEY, JR. COMPANY,

County of Residence of First Listed Defendant: **Cook County, IL**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

0:09cv60646 JIC/BSS

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☑ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO
b) Related Cases ☐ YES ☑ NO

JUDGE _____  DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Class Action Fairness Act, 28 U.S.C. §1332 (2005)
Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 et seq.)
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD  DATE  5-1-09

FOR OFFICE USE ONLY
AMOUNT  350.00   RECEIPT # 546175   IFP _____