UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-CIV-COHN/SELTZER

CAROL D. SMITH, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

WM. WRIGLEY JR. COMPANY,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Complaint in Its Entirety and Incorporated Memorandum of Law [DE 20] ("Motion to Dismiss"). The Court has considered the Motion to Dismiss, Plaintiff's Response [DE 25], Defendant's Reply [DE 26], the record in this case, and is otherwise advised in the premises.[1]

### I. BACKGROUND

This case centers on Wm. Wrigley Jr. Company's ("Wrigley") claim "that its Eclipse® gum brand is 'scientifically proven to help kill the germs that cause bad breath' as a result of the 'natural ingredient,' Magnolia Bark Extract ('MBE')". Compl. ¶ 3. Plaintiff alleges that "[t]his claim is false, deceptive and likely to mislead." Id.

In June 2008, "Wrigley released a reformulated version of Eclipse® gum and touted it as 'the first and only brand to include Magnolia Bark Extract, a natural ingredient scientifically proven to kill the germs that cause bad breath.'" Id. ¶ 12. The

---

[1] The Court notes that any future addenda of unpublished authorities need only include authorities that are not available on either Lexis or Westlaw.

Complaint alleges that "Wrigley has engaged in an extensive and comprehensive nationwide advertising campaign, spending millions of dollars to convey this deceptive message to consumers throughout the United States." Id. ¶ 5. The Complaint contains several examples of Wrigley's allegedly false advertising, including statements contained on the packaging. See id. ¶¶ 13-15.

Plaintiff states that "[i]n furtherance of its fraudulent and deceptive scheme, Wrigley attempts to pass off approximately nine irrelevant or inadequate studies, claiming that they constitute 'scientific proof.' None of these studies, taken separately or in total, substantiate Wrigley's claim." Id. ¶ 21. In support of this allegation, Plaintiff points to a study performed by the National Advertising Division of The Council of Better Business Bureaus, Inc. ("NAD").[2] In April 2009, the NAD "examined Wrigley's Eclipse® gum marketing [campaign] and concluded it was deceptive." Id. ¶ 42. Plaintiff alleges that the NAD recommended that Wrigley's campaign "be discontinued or modified to indicate that there is emerging evidence as to MBE's germ killing capability without expressly or by implication communicating that there is credible scientific evidence that the gum has been proven to kill the germs that cause bad breath or provides fresh breath based on any germ killing capability." Id.

Plaintiff asserts that "as a result of this deceptive advertising campaign," Wrigley (1) "has elevated Eclipse® gum into one of the top sellers in the product category," id. ¶ 6; and (2) "has been able to charge a premium price for Eclipse® gum over other chewing gum products, including other Wrigley chewing gum products." Id. ¶ 7.

---

[2] According to the Complaint, "[t]he NAD describes itself as the advertising industry's self-regulatory forum, whose purpose is to foster truth and accuracy in national advertising." Compl. ¶ 42.

Plaintiff brings two causes of action on behalf of a putative class of Eclipse gum purchasers within the State of Florida.

> Count I of the Complaint asserts a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., ("FDUTPA"), alleging, among other things, that "Plaintiff and the Class have been aggrieved by Wrigley's unfair and deceptive practices in that they paid for Eclipse® gum." [Compl. ¶¶ 49-58]. Count II of the Complaint asserts a claim for breach of express warranty in that . . . Wrigley falsely warrants that Eclipse® gum is "scientifically proven" to help kill germs that cause bad breath. [Compl. ¶¶ 59-63].

DE 25 at 1.

Defendant filed the instant Motion seeking dismissal of the Complaint in its entirety. Defendant argues that Plaintiff's FDUTPA claim "fails as a matter of law because the Complaint makes only conclusory allegations that advertising statements about Wrigley Eclipse gum caused her to suffer 'actual damages' or be 'aggrieved.'" DE 20 ¶ 1. Next, Defendant argues that Plaintiff's claim for breach of express warranty fails for two independent reasons: (1) Plaintiff is not "in privity" with Defendant, and (2) Plaintiff fails to allege a legally cognizable injury. Id. ¶ 2.

## II. LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65,

167 L. Ed. 2d 929 (2007) (citations omitted).  The Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  At this stage in the litigation, the Court must consider the allegations in the Complaint as true.  <u>Jackson v. Okaloosa County, Fla.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994).

### III. ANALYSIS

**1.  <u>The Complaint States a Claim under FDUTPA</u>**

To state a claim for equitable relief under FDUTPA, Plaintiff must allege, at a minimum, that she has been aggrieved.  See <u>Macias v. HBC of Florida, Inc.</u>, 694 So. 2d 88, 90 (Fla. 3rd DCA 1997) ("in order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act").  A claim for damages under FDUTPA requires the Plaintiff to allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  <u>City First Mortgage Corp. v. Barton</u>, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), <u>review denied</u>, 962 So. 2d 335 (Fla. 2007)).  Specifically, Fla. Stat. § 501.211 provides that the following individuals are entitled to relief:

> (1) Without regard to any other remedy or relief to which a person is entitled, <u>anyone aggrieved</u> by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

4

> (2) In any action brought by <u>a person who has suffered a loss</u> as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

Fla. Stat. § 501.211 (emphasis added). Although there is some dispute between the parties regarding the distinction between these two standards, it is clear that "the statute made declaratory and injunctive relief available to a broader class of plaintiffs than could recover damages." <u>Gritzke v. M.R.A. Holding, LLC</u>, No. 01-cv-495-RH, 2002 WL 32107540, *3 (N.D. Fla. Mar. 15, 2002). In other words, a plaintiff that is able to allege that he or she "has suffered a loss" will qualify for relief under both standards. Accordingly, the Court will first determine whether Plaintiff has satisfied Fla. Stat. § 501.211(2).

"As a general rule, the measure of actual damages under [FDUTPA] is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." 10A Fla. Jur. 2d <u>Consumer and Borrower Protection</u> § 172 (2009); <u>accord</u> <u>Rollins</u>, 951 So. 2d at 869; <u>Eclipse Med. v. Am. Hydro-Surgical Instruments</u>, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999). "Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim." <u>Collins v. DaimlerChrysler Corp.</u>, 894 So. 2d 988, 990 (Fla. 5th DCA 2004). In addition, "actual out of pocket losses" are not a prerequisite to a deceptive trade practices action in Florida. <u>Id.</u> at 990. However, "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." <u>Rollins</u>, 951 So. 2d at 873.

The Complaint alleges that "Plaintiff was exposed to and saw Wrigley's advertising claims and purchased Eclipse® gum in reliance on these claims." Compl. ¶ 9. The Complaint further alleges that "as a result of the misleading messages . . ., Wrigley has been able to charge a price premium for Eclipse® gum." Id. ¶ 7. Accepting these allegations as true, the Court finds that Plaintiff alleges that she "has suffered a loss" which was proximately caused by Defendant's deceptive, misleading and unfair trade practices. See Collins, 894 So. 2d at 990-91 ("[Plaintiff] claims an actual injury in the form of insufficient product value. In other words, she contends that she did not get what she bargained for."). Accordingly, Plaintiff's allegations state a claim under sections one and two of Fla. Stat. § 501.211.

Defendant argues that Plaintiff's allegations are similar to those rejected by Judge Jordan in Prohias v. Pfizer, Inc., 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (dismissing FDUTPA claims due to plaintiffs' failure to allege they "are actually injured or aggrieved by the allegedly misleading advertisement"). In Prohias, the plaintiffs alleged that although the drug Lipitor reduces cholesterol levels, "there is no scientific support for the claim that Lipitor reduces the risk of heart disease in women or elderly patients who do not already have heart disease or diabetes." Id. at 1332. The plaintiffs further alleged that defendants engaged in an advertising claim "to create the impression that Lipitor protects against heart disease, thus misleading consumers as to the benefits of Lipitor." Id. "Such misleading advertisements, according to the plaintiffs creates artificial demand for Lipitor and an artificial increase in Lipitor's price, thus causing economic injury to Lipitor purchasers." Id.

Judge Jordan dismissed the plaintiffs' FDUTPA claims finding that the complaint's allegations failed to establish that plaintiffs were "aggrieved" or "suffered a loss." Id. at 1335-38. Critical to the court's holding was that the plaintiffs "still pay for

Lipitor notwithstanding their knowledge of its alleged lack of benefits." Id. at 1334 (emphasis in original). "[T]he fact that they currently take Lipitor, in light of the information they have, requires me to conclude that they take Lipitor for its cholesterol-reduction or other undisputed health benefits, and therefore cannot claim to have suffered any damage from the allegedly misleading statements about Lipitor's coronary benefits." Id. at 1336. There is no information before this Court that Plaintiff continues to pay for Eclipse gum despite knowledge that MBE is not "scientifically proven to help kill the germs that cause bad breath." Compl. ¶ 3.

In Prohias, the court also did not accept plaintiffs' argument that "they are injured within the meaning of the consumer fraud statutes . . . because they paid a higher price for Lipitor than the market would have borne if not for Pfizer's advertising scheme–specifically they allege 'price inflation' damages." Prohias, 485 F. Supp. 2d at 1336. The court rejected these damages as "too speculative" reasoning that "proof of any such 'price inflation' injury would depend on evidence that the pharmaceutical market is 'efficient' such that information about Lipitor's efficacy results in changes in its price." Id. Here, there is no such need for speculation or reliance on market forces because Plaintiff alleges that "as a result of the misleading messages . . ., Wrigley has been able to charge a price premium for Eclipse® gum over other chewing gum products, including other Wrigley chewing gum products." Compl. ¶ 7.

In addition, Defendant relies on Gorran v. Atkins Nutritionals, Inc., 464 F. Supp. 2d 315 (S.D.N.Y. 2006). In Gorran, the plaintiff's FDUTPA claim was based on alleged deceptive conduct in connection with products related to the Atkin's Diet. The Court finds that this case is inapposite. There, after finding that defendants' conduct was not unfair or deceptive, the court stated that "the true damages that [plaintiff] seeks are for personal injury, but such damages are not recoverable under the FDUTPA." Id. at 329. Defendant also cites Frye v. L'Oreal USA, Inc., 583 F. Supp. 2d 954 (N.D. Ill. 2008),

where the plaintiff brought a claim under the Illinois Consumer Fraud and Deceptive Practices Act based on allegations that although defendants marketed their lipstick as "safe for use," the lipstick contained dangerous amounts of lead. Id. at 957. However, in Frye, the court found that "there is no allegation that the presence of lead in the lipstick had any observable economic consequences;" id. at 958; whereas in the case before this Court, Plaintiff alleges a "price premium" based on Defendant's alleged deceptive conduct. Compl. ¶ 7. None of the cases discussed herein, nor the remaining cases cited in Defendant's memoranda of law, disturb the Court's reasoning above that Plaintiff's allegations state a valid FDUTPA claim at this stage in the litigation.³

### 2.     The Complaint States a Claim for Breach of Express Warranty

Defendant argues that Plaintiff's breach of warranty claim should be dismissed for failure to allege an injury. See DE 20 at 10-11. In order to state a claim for breach of warranty, the Plaintiff in this case must allege "injuries sustained by the buyer as a

---

³ Defendant argues that the Complaint fails under the Supreme Court decisions of Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The Court disagrees. First, these opinions do not change the fundamental analysis that a district court engages in when ruling on a motion to dismiss, i.e., accepting all plausible allegations as true and determining whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Second, the Court finds that the Complaint does not run afoul of the prohibition of conclusory statements or mere recital of the elements of a cause of action. See Twombly, 550 U.S. at 555. In Twombly, an antitrust case, the plaintiffs "flatly pleaded that the defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another.'" Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550 U.S. at 551). Here, the Complaint does not merely conclude that Defendant engaged in deceptive conduct that caused her harm. Conversely, Plaintiff here alleges that Defendant undertook an extensive advertising campaign and charged a price premium based on the claim that MBE is "scientifically proven to help kill the germs that cause bad breath." See, e.g., Compl. ¶¶ 3, 5, 7. In reliance on this claim, Plaintiff purchased the gum and paid the price premium. See, e.g., Compl. ¶¶ 7, 9, 55. Plaintiff did not get what she bargained for because the claim is allegedly false. See, e.g., Compl. ¶¶ 3, 42, 62.

result of the breach of warranty." Dunham-Bush, Inc. v. Thermo-Air Service, Inc., 351 So. 2d 351, 353 (Fla. 4th DCA 1977). "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Fla. Stat. § 672.714. For the reasons discussed in the preceding section, the Court finds that Plaintiff satisfies this element.

Defendant's Motion states that Plaintiff "has alleged no facts establishing privity with Wrigley. A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant." DE 20 at 9. Defendant cites case law for the propositions that "to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant," T.W.M. v. American Medical Sys., 886 F. Supp. 842, 844 (N.D. Fla. 1995), and "[p]rivity is required even if suit is brought against a manufacturer." Tolliver v. Monaco Coach Corp., No. 06-CV-856, 2006 WL 1678842 (M.D. Fla. June 16, 2006). Plaintiff asserts that Defendant is "flat wrong" and relies on Hoskins v. Jackson Grain Co., 63 So. 2d 514 (Fla. 1953), to argue privity is not required in this case. DE 25 at 12.

The privity requirement in Florida warranty claims is a moving target which depends on factors including whether the warranty is express or implied and the type of injury alleged. The Florida Supreme Court acknowledged that "warranty law in Florida has become filled with inconsistencies and misapplications in the judiciary's attempt to provide justice to the injured consumer." West v. Caterpillar Tractor Co., 336 So. 2d 80 (Fla. 1976). The Florida Supreme Court has clarified the law in West and Kramer v. Piper Aircraft Corp., 520 So. 2d 37 (Fla. 1988), in cases involving implied warranty

9

claims. See David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1321-23 (S.D. Fla. 2009) (containing a comprehensive discussion of the evolution of implied warranty claims under Florida law). It is now well-settled that, barring certain exceptions, "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005); see also David, 629 F. Supp. 2d at 1323. However, the Florida Supreme Court has not provided similar clarification for express warranty claims and the stark difference in the positions taken by the parties demonstrates that a degree of uncertainty persists. See, e.g., John W. Reis, The Magic of Privity in Express Product Warranty Claims: A Plaintiff's Perspective, 79 Florida Bar Journal 50, 50 (2005) (discussing the "murky" case law regarding the privity requirement in express warranty claims).

After review of relevant case law, the Court makes the following observations. First, several Florida cases discussing warranty claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("MMWA"), have dismissed implied warranty claims against a manufacturer for lack of privity while allowing express warranty claims to go forward. See Mesa v. BMW of North America, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (holding plaintiff could pursue an express warranty claim against warrantor BMW, but "cannot maintain suit against BMW for breach of implied warranty as there was no privity of contract between [plaintiff] and BMW"); Rentas v. DaimlerChrysler Corp., 936 So. 2d 747 (Fla. Dist. Ct. App. 2006) (holding purchasers of a used car could pursue a breach of express warranty claim against the manufacturer, who had issued a written warranty, but could not pursue an implied warranty claim because there

was no privity of contract); Cerasani v. Am. Honda Motor Co., 916 So. 2d 843, 846 (Fla. Dist. Ct. App. 2006) (holding that subsequent purchaser was entitled to protections of express written warranty but could not assert claim for implied warranty because complaint did not allege privity). Second, in David, a case cited by Defendant which involves breach of express and implied warranty claims under both Florida law and the MMWA, Judge Gold conducts a similar analysis to the aforementioned MMWA cases and makes no mention of privity in discussing the express warranty claims. See David, 629 F. Supp. 2d 1309 (dismissing implied warranty claims for lack of privity but allowing express warranty claims to proceed to summary judgment). Third, Defendant accurately quotes case law stating that "to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant." T.W.M., 886 F. Supp. at 844. However, a closer look at such cases reveals less certainty than that which is implied by the categorical statements. See id. (the opinion does not make clear whether the manufacturer's written warranty was delivered to the plaintiff).[4]

As mentioned, Plaintiff relies heavily on the Hoskins case, which allowed an implied warranty case to go forward despite a lack of privity. Although the West and Kramer decisions have scaled back the precedential value of Hoskins in implied warranty cases, those cases did not address express warranty cases. The Florida Supreme Court's reasoning in Hoskins is particularly apt to the circumstances of this

---

[4] See also Tolliver, 2006 WL 1678842 (defendant moved to dismiss implied warranty claims but did not seek dismissal of express warranty claims); Intergraph Corp. v. Stearman, 555 So. 2d 1281 (Fla. 2d DCA 1990) (five sentence opinion contains no discussion of the nature of the express warranty at issue).

case. In Hoskins, a case involving a mislabeled seed, the Florida Supreme Court found "it would be utterly unsound and unfair" to hold that the plaintiff "could not recover from the one who knew the origin and history of the seed, simply because the farmer got them direct from retailer who knew no more about them than he." Id. 63 So. 2d at 515-16. The court went on to state that "[r]ecompense for such a loss traceable to the mislabeling of seed by one who knew the origin of the seed he was selling for gain, but who carelessly misnamed them, should not depend on the slender circumstance of direct dealing between the wholesaler and the farmer." Id. at 516.

Many states have done away with the privity requirement in cases involving a manufacturer's express warranty. See, e.g., Kinlaw v. Long Mfg. N. C., Inc., 259 S.E. 2d 552, 557 (N.C. 1979) ("Authority from most other jurisdictions holds that a purchaser who relies upon a manufacturer's representations can recover for breach of an express warranty despite lack of privity."). In Kinlaw, the North Carolina Supreme Court reached this conclusion based, in part, on the following reasoning:

> The privity bound procedure whereby the purchaser claims against the retailer, the retailer against the distributor, and the distributor, in turn, against the manufacturer, is unnecessarily expensive and wasteful. We find no reason to inflict this drain on the court's time and the litigants' resources when there is an express warranty directed by its terms to none other than the plaintiff purchaser.

Id.

The Court need not resolve the issue of whether privity is ever required for express warranty claims under Florida law. Rather, the Court finds that, given the particular facts of this case, the analysis here is relatively straight-forward. First, this case is not similar to T.W.M. or Stearman. In each of those cases, whether it be a

doctor installing an implant or a computer salesman, it could be assumed that the end-purchaser might expect the seller or "middle man" to have relevant knowledge, or even expertise, regarding the manufacturer's product.  Here, it defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with the scientific properties of MBE.  Second, it is significant that the express warranty the manufacturer allegedly breached is contained on the packaging of Eclipse gum.  Compl. ¶ 14.  Moreover, the Complaint alleges that Plaintiff relied on the warranty when purchasing the gum.  Id. ¶ 8.  Accordingly, the Court finds that Plaintiff states a valid claim for breach of express warranty.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 20] is **DENIED**.
2. The parties shall meet and confer regarding a schedule for filing a motion for class certification, including deadlines for the parties' submissions and necessary discovery.  By **October 14, 2009**, the parties shall file proposed schedule regarding the same.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this /st day of October, 2009.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

13