UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-Civ-Cohn/Seltzer

| | |
|---|---|
| CAROL D. SMITH, on Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        vs.<br><br>WM. WRIGLEY, JR. COMPANY,<br><br>    Defendant. | **AMENDED CLASS ACTION COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Carol D. Smith ("Plaintiff") brings this action on behalf of herself and all others similarly situated against defendant Wm. Wrigley, Jr. Company ("Wrigley" or "Defendant"), and states:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Wrigley. Further, greater than two-thirds of the Class members reside in states other than the state in which Wrigley is a citizen.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

   (a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District;

   (b) does substantial business in this District; and

   (c) is subject to personal jurisdiction in this District.

**NATURE OF THE ACTION**

3. This is a consumer rights and deceptive advertising action. Wrigley claims in its advertising, including on its package labels, that its Eclipse® gum and mints brand is "scientifically proven to help kill the germs that cause bad breath" as a result of the "natural ingredient," Magnolia Bark Extract. This claim is false, deceptive and likely to mislead.

4. Further, these claims are not substantiated, and Wrigley failed to substantiate the claims at all times they were made, in violation of federal and state law.

5. Meanwhile, Wrigley has engaged in an extensive and comprehensive nationwide advertising campaign, spending millions of dollars to convey this deceptive message to consumers throughout the United States. Wrigley conveyed and continues to convey its

deceptive claims about Eclipse® gum and mints through a variety of media, including television, newspapers, magazines, direct mail, the Internet, point-of-sale displays, and on the product's labels and labeling.  Each consumer who has purchased Eclipse® gum or mints has been exposed to Wrigley's misleading advertising message multiple times.

6. As a result of this deceptive advertising campaign, Wrigley has elevated Eclipse® gum into one of the top sellers in the product category.

7. And as a result of the misleading messages conveyed through its campaign, Wrigley has been able to charge a price premium for Eclipse® gum or mints over other chewing similar products, including other Wrigley products.

8. Plaintiff brings this action on behalf of all persons who purchased, other than for resale, Eclipse® gum or mints labeled with the "germ killing" message beginning on June 1, 2008, to halt the dissemination of the false and misleading advertising messages, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who purchased Eclipse® gum and mints.

**PARTIES**

9. At all times relevant to this matter, Plaintiff Carol D. Smith resided and continues to reside in this District.  During the class period, Plaintiff was exposed to and saw Wrigley's advertising claims and purchased Eclipse® gum or mints in reliance on these claims.

10. Wrigley is incorporated in the State of Delaware and is headquartered in Chicago, Illinois.  Wrigley is registered to do business in the State of Florida, and does business in the State of Florida.  Wrigley promotes, markets, distributes and sells Eclipse® gum throughout the United States, including to tens of thousands of consumers in the State of Florida.  Wrigley is a wholly owned corporate subsidiary of Mars, Incorporated, a corporation headquartered in McLean, Virginia.  Wrigley is the largest gum company in the United States and worldwide.  In 2007, Wrigley achieved net sales in excess of $5,000,000,000.

Case No. 09-60646-Cohn/Seltzer

## FACTUAL ALLEGATIONS

11. In 1999, Wrigley launched its Eclipse® gum brand into the "intense pellet gum segment" of the chewing gum market. This market is a highly competitive one.

12. In an effort to reverse share declines in the United States, leverage its investments in marketing and research development, and ultimately "giv[e] consumers new reasons to chew Wrigley gum," in June 2008, Wrigley released a reformulated version of Eclipse® gum and touted it as "the first and only brand to include Magnolia Bark Extract, a natural ingredient scientifically proven to kill the germs that cause bad breath." During approximately the same time period, Wrigley also began marketing mints, making the same advertising claims.

13. Since that time, Wrigley has made, and continues to make, the following marketing claims about Eclipse® gum and mints with Magnolium Bark Extract in all of its advertising, including on the product label:

> Most other gums just mask bad breath. We kill the germs that cause it. New Eclipse now contains a natural ingredient that kills the germs that cause bad breath.

> Now with natural Germ killing* . . . Incredibly fresh breath. * Now Eclipse contains a natural ingredient, scientifically proven to help kill the germs that cause bad breath.

> Eclipse now contains a natural ingredient that kills the germs that cause bad breath.

14. The subject representations for the gum and mint products are the same. For example, the label on each package of Eclipse® gum substantially appears as follows:





15. Similarly, in its television commercials, Wrigley conveys the same message:

Announcer: "New Germ Killing Eclipse Gum. Advanced fresh breath, when you need it."

An individual is shown speaking to a man in very close proximity and his reaction is one of disgust as he turns away and hands the person a pack of Eclipse gum with MBE and says "seriously."

Announcer: [Cutting to a shot of the Eclipse® gum package.] "Most other gums just mask bad breath. Now great tasting Eclipse has a great tasting ingredient that kills the germs that cause it."

A woman is shown speaking to the two men in close proximity. As one of the men turns away in disgust she whispers "Sorry. I'm so sorry."

Announcer: [Cutting to a shot of the Eclipse® gum package] "Now Eclipse gum kills germs. Advanced fresh breath . . . seriously."

16. This claim is false, misleading and likely to deceive the consuming public. Further, Wrigley does not have competent and reliable scientific evidence supporting this claim, let alone substantiation that the claim is "scientifically proven."

4

17. "Bad breath" or oral malodor is caused by oral bacteria referred to collectively as volatile sulfur compounds ("VSC"). It is commonly accepted that killing these "germs" will reduce or eliminate bad breath.

18. Wrigley acknowledges that the success of its chewing gum products is dependent upon "leveraging" its advertising message. In 2007, Wrigley infused $150 million into advertising and even established its own "Marketing College." Wrigley believes the effectiveness of marketing and labeling its chewing gum products, including Eclipse® gum, is what "fuel[s] velocity off store shelves." In turn, it used its representations with its chewing gum products to advertise the subject mints in the same way, and to use the same "scientific proof" to support the claims.

19. Wrigley hires people to create "scientific proof" to substantiate Wrigley's claims. Wrigley and theses individuals work in concert to produce results which Wrigley then represents support its claims.

20. In 2006, Wrigley created the Wrigley Science Institute to fund purportedly independent research to "explore new benefits of chewing gum." Wrigley states that through the Wrigley Science Institute research, the company is "giving consumers new reasons to chew Wrigley Gum and build [] category consumption."

21. In furtherance of its fraudulent and deceptive scheme, Wrigley attempts to pass off approximately nine irrelevant or inadequate studies, claiming that they constitute "scientific proof." None of these studies, taken separately or in total, substantiate Wrigley's claims.

## THE TWO IN-HOUSE *EX VIVO* STUDIES

22. Wrigley launched its false advertising campaign based on two *ex vivo* studies conducted by Wrigley, itself. At the time the studies were conducted, Wrigley had already planned the advertising campaign that is the subject of this action.

23. In each of the *ex vivo* studies, the subjects chewed a compound for five minutes to stimulate saliva flow, after which time the subjects spit their saliva into test tubes. The saliva

5

was added to two different MBE solutions, then transferred to plates from which a reduction in anaerobic and VCS bacteria could be determined.

24. While the studies generally noted a reduction in the number of bacteria, neither contains any data on VSC bacteria and, therefore, neither recorded a decrease in VSC bacteria.

25. Further, the two *ex vivo* studies failed to account for how much MBE would be swallowed, if any, to determine if there would be any interaction with VSC bacteria. In fact, Wrigley failed to validate whether its saliva examination would contain VSC bacteria, or otherwise simulate actual use.

## THE *IN VITRO* TESTING

26. In October 2008, Wrigley conducted another in-house test. This one was conducted *in vitro*. In this test, five varieties of Eclipse® gum containing MBE, three varieties of Eclipse® gum that did not contain MBE, and Dentyne ® Ice Peppermint Gum, which does not contain MBE, were compared.

27. 27. Each of the gum varieties was dissolved into sterile water and each was dissolved in sterile water containing VSC bacteria.

28. 28. In addition to many methodological and design flaws, the results failed to demonstrate any meaningful difference in gum containing MBE and gum that did not. In fact, in this flawed study, the Eclipse® gum containing MBE and the Eclipse® gum without MBE had a greater than 50% kill rate of VSC bacteria.

## THE APRIL, MAY AND DECEMBER 2008 *IN VIVO* STUDIES

29. In April, May and December 2008, Wrigley finally tested its claims with *in vivo* testing. To ensure favorable results, Wrigley purposely designed flawed studies.

30. For this study, the subjects chewed Eclipse® gum for five minutes, after which time they all spit into the same test tube and the level of all bacteria was determined.

31. This testing did not follow proper methodology. The *in vivo* testing did not gather the subjects' saliva before they chewed Eclipse® gum to compare it to saliva after they chewed Eclipse® gum. Nor did the testing identify saliva samples over the period of time during which

6

the subjects chewed Eclipse® gum. Instead, the *in vivo* testing commingled the bacteria in the saliva samples since the subjects spit into the same test tube over a five minute period and thereby distorted any proper measurement for the actual rate at which bacteria were reduced. This test also failed to use a proper control.

33. For these and other reasons, the April, May and December 2008 *in vivo* testing does not constitute competent and reliable scientific evidence of Wrigley's claims about Eclipse® gum.

## THE 2007 GREENBERG STUDY

33. On its website, Wrigley represents that its claim is supported by a 2007 study, Michael Greenberg, Compressed Mints and Chewing Gum Containing Magnolia Bark Extract Are Effective Against Bacteria Responsible for Oral Malodor, 55 J. Agric. & Food Chem. 9465 (2007) ("Greenberg study").

34. The study tested saliva samples before and after the subjects were given MBE. The study sample size was scientifically flawed, as it was conducted on just nine people. Further, each of the nine was a Wrigley employee.

35. The Greenberg study found that gum with .067% MBE did not show statistically significant germ-kill compared to Eclipse® Winterfresh Gum, the placebo control which did not contain any MBE.

36. Eclipse® gum contains 42% less MBE than the gum tested in the Greenberg study (556 parts per million (ppm) compared to the 955 ppm). Therefore, if reliable and relevant, the Greenberg study actually indicates that Wrigley's claim is false.

37. Its relevance, however, is suspect. The composition of the MBE in Eclipse® gum is different than the composition of the MBE used in the Greenberg study. MBE consists of two substantive components – the compounds known as "magnolol" and "honokiol." The MBE used in the study contained 940 ppm of magnolol and 15 ppm of honokiol. Eclipse® gum, however, contains 450 ppm of magnolol and 106 ppm of honokiol.

7

## THE JANUARY 2009 HILL TOP STUDY

38.     On its website, Wrigley represents that another study supports its claims.  This study was not conducted until January 2009, and is known as the Hill Top Study.

39.     This study purportedly demonstrated an odor reduction for subjects chewing Eclipse® gum at a five minute interval and then at a twenty minute interval.

40.     However, this study suffers from flawed methodology.  The study did not adequately employ a control.  Therefore, the study's findings are useless.

41.     Further, the odor evaluations were conducted while the subjects were still chewing Eclipse® gum, thereby invalidating the results.

## INDUSTRY SPONSORED WATCHDOG GROUP FOUND CLAIM DECEPTIVE

42.     In April 2009, the National Advertising Division of The Council of Better Business Bureaus, Inc. (hereinafter, the "NAD") examined Wrigley's Eclipse® gum marketing claims and concluded it was deceptive.  The NAD describes itself as the advertising industry's self-regulatory forum, whose purpose is to foster truth and accuracy in national advertising. After examining the claim and the claim substantiation, the NAD concluded that Wrigley's campaign:

> be discontinued or modified to indicate that there is emerging evidence as to MBE's germ killing capability without expressly or by implication communicating that there is credible scientific evidence that the gum has been proven to kill the germs that cause bad breath or provides fresh breath based on any germ killing capability. NAD also recommended that the commercials be discontinued because they expressly state "Most other gums just mask bad breath. We kill the germs that cause it" and that Eclipse gum with MBE delivers advanced fresh breath, messages that are not supported by the evidence in the record.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this lawsuit on behalf of herself and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  The proposed Class consists of:

> All persons who purchased, other than for resale, Eclipse® gum or mints imbedded with the "germ kill" message between June 1, 2008 to the date Wrigley stops making the subject claim in its advertisements or the date notice is provided

8

to the class, whichever is earlier. Excluded from the Class are the Defendant, its officers, directors, and employees.

44. Numerosity. The class consists of tens of thousands of consumers. Therefore, the members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiff. The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

45. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Wrigley had adequate substantiation for its claims prior to making them;

(b) whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c) whether the alleged conduct constitutes violations of the laws asserted herein;

(d) whether Wrigley engaged in false or misleading advertising;

(e) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(f) whether Plaintiff and Class members are entitled to an award of punitive damages; and

(g) whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

46. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class and Plaintiff has the same claims as those of the other Class members.

47. *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

48. *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I

### For Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq., On Behalf of Plaintiff and the Class

49. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

50. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et seq. (the "Act"). The express purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

51. Plaintiff is a consumer as defined by Fla. Stat. §501.203. Eclipse® gum is a good within the meaning of the Act. Wrigley is engaged in trade or commerce within the meaning of the Act.

52. Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

53. Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." Wrigley's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343. Further, FTC rules and regulations require that Wrigley have the same level of substantiation for its advertisements at the time they are made as it claimed in the advertisement. Wrigley claims clinical and scientific proof, but does not have clinical or scientific proof.

54. Wrigley has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

55. Plaintiff and the Class have been aggrieved by Wrigley's unfair and deceptive practices in that they paid for Eclipse® gum.

56. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Wrigley, as more fully described herein.

57. Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

58. Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, punitive damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

59.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

60.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Eclipse® gum.  The terms of that contract include the promises and affirmations of fact made by Wrigley on its product labels and through its marketing campaign, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Wrigley on the other.

61.     All conditions precedent to Wrigley's liability under this contract, including notice, have been performed by Plaintiff and the Class.

62.     Wrigley breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product which could provide the promised benefits as described above.

63.     As a result of Wrigley's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Eclipse® gum at issue.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.      Certifying the Class as requested herein;

B.      Awarding Plaintiff and the proposed Class members damages;

C.      Awarding restitution and disgorgement of Wrigley's revenues to Plaintiff and the proposed Class members;

D.      Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and

directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

  E. Awarding Plaintiff and the Class punitive damages;

  F. Ordering Wrigley to engage in a corrective advertising campaign;

  G. Awarding attorneys' fees and costs; and

  H. Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 27, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
JONATHAN M. STEIN (FBN 009784)
CULLIN A. O'BRIEN (FBN 597341)

*s/ Jonathan M. Stein*
JONATHAN M. STEIN

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
jstein@rgrdlaw.com
cobrien@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JOHN J. STOIA, JR.
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@csgrr.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*Pro Hac Vice*)
THOMAS J. O'REARDON II (*Pro Hac Vice*)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Case No. 09-60646-Cohn/Seltzer

        BALKAN & PATTERSON, LLP
        ADAM BALKAN (FBN 0044880)
        JOHN PATTERSON (FBN 023930)
        601 S. Federal Highway, Suite 302
        Boca Raton, FL 33432
        Telephone: 561/750-9191
        561/750-1574 (fax)
        adam@balkanpatterson.com
        john@balkanpatterson.com

        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on May 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CF/ECF participants indicated on the Electronic Mail Notice List.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 27, 2010.

        *s/ Jonathan M. Stein*
        JONATHAN M. STEIN

        ROBBINS GELLER RUDMAN & DOWD LLP
        JONATHAN M. STEIN (FBN 009784)
        120 East Palmetto Park Road, Suite 500
        Boca Raton, FL 33432
        Telephone: 561/750-3000
        561/750-3364 (fax)
        jstein@rgrdlaw.com
        cobrien@rgrdlaw.com