UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-CIV-COHN-SELTZER

CAROL D. SMITH, on Behalf of Herself and )
All Others Similarly Situated, )
           )
                 Plaintiff, )
           )
       vs. )
           )
WM. WRIGLEY, JR. COMPANY, )
           )
                Defendant. )
           )
_____ )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT REQUEST FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     HISTORY OF THE LITIGATION .......................................................................3

III.    SETTLEMENT TERMS .......................................................................................5

        A.      Injunctive Relief.........................................................................................5

        B.      Monetary Relief .........................................................................................5

        C.      Class Notice, Claims Administration, and Attorneys' Fees ......................6

        D.      The Proposed Notice Program ...................................................................6

IV.     THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR
       PRELIMINARY APPROVAL ...............................................................................8

    A.      The Standard for Preliminarily Approval ..............................................8

        1.      The Proposed Settlement Resulted from Serious, Informed and
                Non-Collusive Arm's-Length Negotiations.................................9

        2.      The Proposed Settlement Is Fair to Both Plaintiff and Class
                Members .....................................................................................11

        3.      The Terms of the Settlement Compel Preliminary Approval ...................12

V.      THE CLASS SHOULD BE CONDITIONALLY CERTIFIED.........................13

    A.      The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a) .................13

        1.      Numerosity..................................................................................13

        2.      Commonality................................................................................14

        3.      Typicality ....................................................................................14

        4.      Adequacy of Representation .......................................................15

    B.      The Settlement Class Should Be Preliminarily Approved Under Federal
       Rule of Civil Procedure 23(b)(3) ............................................................16

        1.      Common Questions Predominate Over Individual Issues ..........16

      2.      A Class Action Is The Superior Method to Settle This Controversy.........16

VI.    THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND
CLASS NOTICE SHOULD BE APPROVED ..................................................................17

VII.   THE PROPOSED SCHEDULE OF EVENTS ..................................................................19

VIII.  CONCLUSION....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                               **PAGE**

*Adams v. Inter-Con Sec. Sys., Inc.*,
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)...............................11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).........................................................................................13, 16, 17

*Appleyard v. Wallace*,
   754 F.2d 955 (11th Cir. 1985) .........................................................................................14

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) .......................................................................................2, 8

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ........................................................................................8

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ..................................................................................14, 16

*Collins v. Int'l Dairy Queen, Inc.*,
   168 F.R.D. 668 (M.D. Ga. 1996) .....................................................................................14

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .........................................................................8, 9, 12, 13

*Deposit Guaranty Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)..........................................................................................................17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..........................................................................................................17

*Fabricant v. Sears Roebuck*,
   202 F.R.D. 310 (S.D. Fla. 2001) .....................................................................................17

*Fresco v. Auto Data Direct, Inc.*,
   No. 03-61063, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007).....................2, 11

*General Tel. Co. v. EEOC*,
   446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).....................................................13

*Hamilton Partners, Ltd. v. Sunbeam Corp.*,
   No. 99-CV-8275, 2001 WL 34556527 (S.D. Fla. July 3, 2001).......................................15

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991) ......................................................................................14

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ........................................................................................18

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ............................................................................................8

*In re Disposable Contact Lens Antitrust Litig.*,
    170 F.R.D. 524 (M.D. Fla. 1996)....................................................................................14

*In re Employee Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ................................................9

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ....................................................................................15

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................11

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F. 2d 1088 (5th Cir. 1977) ......................................................................................18

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ........................................................................................13

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..............................10

*Jones v. Firestone Tire & Rubber Co., Inc.*,
    977 F.2d 527 (11th Cir.1992) ........................................................................................13

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ........................................................................................15

*Klay v. Humana*,
    382 F.3d 1241 (11th Cir. 2004) ......................................................................................16

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ......................................................................................14

*Manchaca v. Chater*,
    927 F. Supp. 962 (E.D. Tex. 1996)..................................................................................10

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y 1984) ..................................................................................12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...................................................................................17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................17

*Pinto v. Princess Cruise Lines*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) .........................................................11

*Rutstein v. Avis Rent-A-Car Sys.*,
    211 F.3d 1228 (11th Cir. 2000) .....................................................................16

*Smith v. Wm. Wrigley Jr. Co.*,
    663 F. Supp. 2d 1336 (S.D. Fla. 2009) .........................................................4

*Veal v. Crown Auto Dealerships, Inc.*,
    236 F.R.D. 572 (M.D. Fla. 2006) .................................................................15

*Weiner v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) .......................................................14, 16, 17

*Young v. Katz*,
    447 F.2d 431 (5th Cir. 1971) .........................................................................8

## STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure 23 .........................................................13, 18, 19
    Rule 23(a)...........................................................................13, 14, 15, 16
    Rule 23(a)(1) ..........................................................................................13
    Rule 23(a)(2) ..........................................................................................14
    Rule 23(b)(3) ....................................................................................16, 17
    Rule 23(b)(3)(A)-(D) ..............................................................................17

Fla Stat. §501.201 *et seq.* ...............................................................................4

## SECONDARY AUTHORITIES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002).......................2, 9

David F. Herr, *Annotated Manual for Complex Litigation* (4th Ed. 2008) .....................................2

Plaintiff Carol D. Smith ("Plaintiff") submits this memorandum in support of the request of Plaintiff and defendant Wm. Wrigley, Jr. Company ("Wrigley") for entry of the [Proposed] Order re: Preliminarily Approval of Class Action Settlement, attached as Exhibit F to the Stipulation of Settlement filed on June 1, 2010.  *See* Docket Entry (D.E.). Nos. 84 (Stipulation) and 84-6 ([Proposed] Preliminary Approval Order).  This request is unopposed.

## I.     INTRODUCTION

The Parties respectfully request that the Court grant preliminary approval of the proposed Settlement of this class action for false advertising.[1]  After extensive and hard-fought litigation, extended settlement negotiations, and several mediation sessions (and many telephone conferences) with Rodney A. Max, Esq., principal with Upchurch Watson White & Max Mediation Group, the Parties have reached a settlement of this Litigation, as memorialized in the Stipulation of Settlement, filed June 1, 2010.  *See* D.E. No. 84 (Stipulation).  The Stipulation provides remediation correcting twin aims of this Litigation – monetary relief for Class members who purchased the products at issue, and an end to the challenged advertisements.

This is a class action alleging false and deceptive advertising and breach of an express warranty.  Beginning on June 1, 2008, Wrigley began marketing certain of its Eclipse® gum and mints (the "Product") as being "scientifically proven to help kill the germs that cause bad breath" as a result of the "natural ingredient," Magnolia Bark Extract ("MBE").  Plaintiff alleges that Wrigley's advertising claim is not true or otherwise substantiated by any scientific studies, including the studies upon which Wrigley purports to rely for the claim.

The Stipulation provides that Wrigley must cease from using in its advertising and labeling of the Product, the "germ kill" messages challenged in the complaint filed in this Litigation.  The Stipulation also provides for cash payments to members of the Class who submit valid Claim Forms

---

[1]     All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation of Settlement (the "Stipulation").  D.E. No. 84.

to recover the full purchase price of the product purchased, up to $10.  To receive a refund a Class member must simply submit a Claim Form online at a website set up for this settlement (www.WrigleySettlement.com) or by mail.  Any money remaining will be donated to one or more charities to be approved by the Court.  If the aggregate sum of the claims exceeds the fund, Wrigley will pay up to an additional $1 million to cover those additional claims.

The Class Notice advising Class members of their rights will be posted on the Settlement Website, on Class Counsel's websites and published in various nationwide publications in accordance with a media plan designed by experts in the field specifically targeting Class members. Further, upon this Court's approval, a Class Action Settlement Administrator will provide Class Notice and administer the claims process.

The proposed Class that the Parties jointly request be certified for purposes of the Settlement is:

> All persons who purchased in the United States the Product at any time up to the date notice is provided to the Class. Excluded from the Class are Defendant's officers, directors and employees and those who purchased the Product for the purpose of resale.

In addition, the Parties move the Court to designate Plaintiff as class representative for the Class, and appoint Plaintiff's counsel as Class Counsel.

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement.  *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") §21.632 (4th ed. 2008).  In so doing, the Court reviews the Settlement to determine if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement."  *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dist. LEXIS 37863, at *11-*12 (S.D. Fla. May 11, 2007) (internal citations omitted); *Bennett v. Behring Corp.*,

737 F.2d 982, 986 (11th Cir. 1984) (A proposed settlement must be "fair, adequate and reasonable and [not] the product of collusion between the parties.").

As set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval. Thus, the Parties jointly request that the Court enter the [Proposed] Order re: Preliminarily Approval of Class Action Settlement that, among other things: (1) preliminarily approves the terms of the Settlement; (2) approves the form, method and plan of Class Notice; (3) certifies the Class for settlement purposes; and (4) schedules a final Settlement Hearing and related dates at which the request for final approval of the proposed Settlement and entry of the Judgment will be considered.

## II.    HISTORY OF THE LITIGATION

On May 1, 2009, Plaintiff initiated this Litigation by filing a class action complaint in this Court (the "Complaint"). *See* D.E. No. 1. The Complaint alleges that Wrigley's advertising and labeling statements regarding the "GERM KILL" properties of its Eclipse gum and mints were false and deceptive. In particular, Wrigley markets these products as being "scientifically proven to help kill the germs that cause bad breath" as a result of the infusion of the "natural ingredient," MBE. Plaintiff alleges that Wrigley's germ kill claims are not true or otherwise substantiated by any scientific studies, including the studies upon which Wrigley purports to rely for the claim.[2]

Before the Complaint was filed, Class Counsel investigated the factual allegations ultimately made in the Complaint. Blood Decl., ¶2.[3] Class Counsel also obtained and reviewed significant literature regarding Wrigley's marketing and purported scientific substantiation behind the Product claims. *Id.*

---

[2]     *See* D.E. No. 81 (First Amended Complaint), ¶¶ 3-4, 16, 21.

[3]     "Blood Decl." refers to The Declaration of Timothy G. Blood in Support of Joint Motion for Preliminary Approval of Class Action Settlement, filed concurrently herewith.

On June 15, 2009, Wrigley moved to dismiss the entire Complaint.  Wrigley argued that the Complaint failed to properly allege injury under the Florida Deceptive and Unfair Trade Practices Act, Fla Stat. §501.201 *et seq.*, and that the express warranty claim failed due to lack of requisite injury and privity.  In a published opinion dated October 1, 2009, the Court denied Wrigley's motion to dismiss in its entirety.  *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009).

The Parties served and responded to significant discovery requests, including requests for production of documents, interrogatories, and requests for admissions.  O'Reardon Decl., ¶¶2, 9.[4] Plaintiff sat for a full day deposition and provided responses to Wrigley's interrogatories and document requests.  *Id.*, ¶9.  In addition to sets of discovery served on Wrigley, Plaintiff served subpoenas for documents upon numerous third-parties involved in marketing the products for Wrigley, as well as researchers testing the product ingredients at issue.  *Id.*, ¶6.  Throughout the Litigation the Parties held numerous meet and confer sessions over Plaintiff's discovery requests and the scope of Wrigley's production of documents in response thereto.  *Id.*, ¶3.  As a result of Plaintiff's discovery requests, Wrigley produced hundreds of thousands of pages of documents from its employees involved in the development, marketing, science and sale of the Product. *Id.*, ¶5.  The subpoenaed parties also produced tens of thousands of pages of documents.  *Id.*, ¶6.  Class Counsel reviewed and analyzed all documents produced in this Litigation.  *Id.*, ¶7.  The Parties also engaged in discovery motion practice, including briefing regarding the entry of a protective order regarding confidential and trade secret information.  *Id.*, ¶4.

On January 22, 2010, Plaintiff filed her Motion for Class Certification.  On February 19, 2010, Wrigley filed its Opposition to the Motion for Class Certification.  In support thereof, Wrigley submitted a declaration from a company vice president and an independent marketing expert. Plaintiff filed her reply on March 12, 2010.  Submitted with Plaintiff's reply memorandum was the

---

[4]     "O'Reardon Decl." refers to The Declaration of Thomas J. O'Reardon II in Support of Joint Motion for Preliminary Approval of Class Action Settlement, filed concurrently herewith.

Declaration of Thomas J. Maronick, DBA, JD, a marketing expert retained by Class Counsel who analyzed Wrigley's marketing campaign and consumer research.

On March 11, 2010, Class Counsel, Defendant, and Defendant's Counsel participated in a full day mediation session with Rodney A. Max, Esq. of Upchurch Watson White & Max Mediation Group. Blood Decl., ¶3. On March 16, 2010, the Parties held a second in-person mediation session with Rodney Max. Significant settlement negotiations continued via numerous conference calls between and among the Parties' counsel and the mediator. *Id.* As a result of the mediations and negotiations, the Parties signed a Memorandum of Understanding regarding a potential settlement on April 12, 2010. Stipulation, §I.B.; Blood Decl., ¶¶3-4. Over the following month, the Parties heavily negotiated every aspect of the proposed settlement and the relief and ultimately the Parties were able to reach agreement. *Id.*, ¶4. The terms and conditions of the Settlement are set forth in the Stipulation of Settlement, filed on June 1, 2010. *See* D.E. Nos. 84 and attached exhibits 84-1 – 84-8.

## III.   SETTLEMENT TERMS

### A.  Injunctive Relief

First, the Settlement puts an end to Wrigley's alleged unlawful practices. By December 31, 2010 or within 90 days of the Effective Date, whichever comes later, and for a period of three (3) years from the Effective Date, Wrigley will not use in its Product advertising and labeling, the challenged "germ kill" message. *See* Stipulation, §IV.B. (Additional Provisions Relating to Injunctive Relief). In addition, Wrigley, will no longer include the MBE ingredient in the products, and will discontinue the use of all "germ kill" messages in the Product advertising and labeling. The Settlement's injunctive relief applies to all Product advertising, including the packaging of the Product and any type of advertisement or promotion on radio, television, the Internet, newspapers, periodicals, point of purchase displays and all other media. *See* Stipulation, §IV.B.1.

### B.  Monetary Relief

The Settlement also provides for cash payments to members of the Class who may seek recovery of money spent on the Products. *See* Stipulation, §§ IV.A.1.-7. Claimants may recover up to $5.00 by submitting a simplified Claim Form either by mail or electronically. Claimants may

recover up to $10.00 by submitting a Claim Form and, at the Claimant's election, either (1) signing the following affirmation under penalty of perjury: "I affirm that I purchased Wrigley Eclipse gum or mints in packaging with a "NATURAL GERM KILLING" message in the United States," or (2) providing receipts or other valid proofs of purchase. Under the Settlement, Wrigley agrees to establish a fund of at least $6 million (and up to $7 million) to pay the eligible claims and certain related costs ("Settlement Fund"). In the event less than $6 million is paid out of the Settlement Fund, the remaining balance will be distributed *cy pres* to one or more appropriate nonprofit or civic entities, rather than being returned to Wrigley. *See* Stipulation, §IV.A.3.(d).

Because of the relatively low dollar amount of the product, and the correspondingly low refunds, the parties anticipate the *cy pres* aspect of the settlement will be significant. To that end, in the Class Notice and on the Claim Form, Class members are reminded that by not submitting a claim, more will be available for charitable donation.

### C. Class Notice, Claims Administration, and Attorneys' Fees

Under the Settlement, Wrigley agrees to pay for the costs of Class Notice and claims administration, utilizing a Class Action Settlement Administrator. Wrigley also agrees to not oppose Plaintiff's application for reasonable attorneys' fees and reimbursement of expenses, and a class representative incentive award. *See* Stipulation, §IV.A.2.

### D. The Proposed Notice Program

The Parties have developed a Notice Program with the help of Garden City Group, Inc. ("Garden City"), a firm that specializes in developing class action notice plans. Because Wrigley does not sell the products directly to consumers, Wrigley does not have mailing addresses for a vast majority of Class members. Therefore, the notice program focuses primarily on publishing the Publication Notice in periodicals and internet sites specifically targeted to reach Class members.

The Publication Notice is designed to provide potential Class members with information regarding the Settlement and to inform them about their rights. *See* D.E. No. 84-4 (the Publication Notice). The Publication Notice contains a general description of the lawsuit, the Settlement relief,

- 6 -

including how a claim can be filed, and a general description of Class members' legal rights.  The Publication Notice also directs Class members to a website dedicated to the Settlement and a toll free number that Class members may use to obtain a copy of the detailed Class Notice, the Claim Form and other information.  Importantly, Class members will also be able to submit the Claim Form online at the Settlement Website.

The Publication Notice will appear in various sources chosen based on marketing research on the demographics of consumers who purchase the products.  As set forth in the media plan, attached as Exhibit G to the Stipulation (D.E. No. 84-7), in addition to a PR Newswire media outreach campaign, the Publication Notice will be published as follows:

| Magazines | Internet |
| --- | --- |
| People (weekly) | Facebook – www.facebook.com |
| Better Homes & Garden (monthly) | AOL ROS – www.aol.com |
| | Weather Run of Forecast – www.weather.com |
| | CCN Run of Story Pages/All News – www.cnn.com |
| | Univision – www.univision.com |
| | Yahoo RON – www.yahoo.com |
| | On Line National Network Buy – placement on over 350 local newspaper and television websites |

Complementing the Publication Notice is the long form Notice of Class Action Settlement (collectively, "Class Notice").  D.E. No. 84-3.  The Class Notice contains detailed information about the lawsuits, the Settlement benefits, the release, and how to opt-out, object and exercise other rights under the Settlement.  Located on the Publication Notice and also provided with the Class Notice is the one-page Claim Form.  *See* D.E. No. 84-1 (the Claim Form).  The long form Notice of Class Action Settlement is attached to the Stipulation of Settlement as Exhibit C.  The Notice of Class

Action Settlement will also be available online at the Settlement Website established for this Litigation and will be mailed upon Class members' request.  Stipulation, §V.A.3.

## IV.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

### A.  The Standard for Preliminarily Approval

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court and will not be overturned unless the district court "clearly abused its discretion in approving the settlement."  *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971).[5]  In making this determination, the Court should evaluate the fairness of the settlement in its entirety.  *Bennett*, 737 F.2d at 986.

Settlements of complex class actions prior to trial are strongly favored.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981).  The preliminary approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms."  *Manual*, §21.632, at 321.  At this stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Stipulation to determine whether notice should be sent to the Class members.  *Id*.  "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  This is a minimal, yet deferential threshold:

> In determining the fairness, adequacy and reasonableness of the proposed compromise, the inquiry should focus upon the terms of the settlement. The settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case.  The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms.

* * *

---

[5] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

Yet, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings.

It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

Neither should it be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.

In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.

In addition to examining the merits of a proposed settlement and ascertaining the views of counsel, the Court should consider other factors.

Practical considerations may be taken into account. It is often said that litigants should be encouraged to determine their respective rights between themselves. Particularly in class action suits, there is an overriding public interest in favor of settlement. It is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action.

*Cotton*, 559 F.2d at 1330-31. (internal citations omitted).

Here, the proposed Settlement plainly satisfies the standard for preliminary approval, as there is no question as to its fairness, reasonableness and adequacy, placing it squarely within the range of possible approval.

### 1. The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations

The requirement that a settlement be fair is designed to protect against collusion among the parties. Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg*, §11.41; *see also In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *5

(D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, the Parties did not begin substantive discussions until after many months of hard-fought litigation, including briefing and this Court's ruling on Wrigley's motion to dismiss, briefing Plaintiff's motion for class certification, and the Parties' extensive discovery efforts. Blood Decl., ¶3. During this time period, Wrigley produced hundreds of thousands of documents responsive to Plaintiff's discovery requests. O'Reardon Decl., ¶5. Wrigley also provided Plaintiff with responses to interrogatories and requests for admission. *Id.* In addition, Class Counsel reviewed and analyzed thousands of pages of documents produced by third-parties subpoenaed in this Litigation. *Id.*, ¶6. Prior to executing the MOU, Plaintiff also retained and worked closely with her expert consultants to examine and analyze Wrigley's internal documents, including its consumer research and purported scientific substantiation for the claims at issue. Blood Decl., ¶3. Through this information, Plaintiff was able to assess the strengths and weaknesses of her case, including the value of the potential damage claims.

With the seminal issue of class certification pending, the Parties engaged the services of mediator Rodney A. Max, Esq., of Upchurch Watson White & Max Mediation Group, an experienced and skilled mediator, who, after numerous in-person mediation sessions and conference calls assisted the Parties to the point of memorializing a Memorandum of Understanding on April 12, 2010. Blood Decl., ¶¶3-4. By this time, Class Counsel, who are experienced in prosecuting complex class action claims such as these, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996); Blood Decl., Exs. 1-3 (Resumes of Blood Hurst & O'Reardon, LLP, Robbins Geller Rudman & Dowd LLP, and John Patterson). The initial full-day mediation session with the mediator was followed by a second full-day session and weeks of detailed and contentious

- 10 -

negotiations between the Parties before agreement on the Settlement was reached.  Blood Decl., ¶3. The fact that the Parties received assistance from an experienced mediator is one factor that demonstrates the Settlement was anything but collusive.  *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").  Further, the nature of the subsequent negotiations between the Parties, the experience of Class Counsel as longstanding class action attorneys, and the fair result reached are illustrative of the arm's-length negotiations that led to the Stipulation of Settlement.

### 2.   The Proposed Settlement Is Fair to Both Plaintiff and Class Members

The proposed Settlement is fair as to Plaintiff and all Class members in that it provides for cash refunds equating to more than five Product purchases.  In addition, Wrigley agrees to stop the false advertising claims that were the subject of the Litigation.  Further, to account for her willingness to step forward and represent other consumers, and to compensate her for her time and effort devoted to prosecuting the common claims, responding to discovery requests, sitting for a deposition and consulting with counsel, the Settlement provides for an incentive award to Plaintiff Smith.  *See Fresco v. Auto. Directions, Inc.*, No. 03-61063, 2009 U.S. Dist. LEXIS 125233, at *24- *25 (S.D. Fla. Jan. 16, 2009) (approving $15,000 incentive awards for class representatives who actively participated in litigation); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 incentive awards).

### 3.   The Terms of the Settlement Compel Preliminary Approval

The terms of Settlement easily meet the standard for preliminary approval. *Cotton*, 559 F.2d 1326. The Settlement puts an end to Wrigley's alleged deceptive practices at the heart of this Litigation and provides economic benefits to Class members who submit eligible claims.

Further, the proposed Settlement provides these benefits without the risk and delays of continued litigation, trial and appeal. The expense, complexity, and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Litigating this class action through trial would undoubtedly be time-consuming and expensive. As with most class actions, this action is complex. *Cotton*, 559 F.2d at 1331 ("[C]lass action suits have a well deserved reputation as being most complex."). The question of whether Wrigley has sufficient scientific substantiation for the Product claims regarding MBE and its alleged germ-killing properties would require extensive analysis by experts for both Parties. At a minimum, absent settlement, litigation would likely continue for years before Plaintiff or the Class might see any recovery. That a settlement would eliminate the delay and expenses strongly weighs in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Class members' claims against Wrigley. These avenues of relief provided meaningful benefits to Class members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

Without question, the Parties worked long and hard to achieve a comprehensive settlement that provides valuable and far-reaching benefits for the Class. There is no reason to doubt the fairness, reasonableness and adequacy of the Settlement, which is surely within the range of possible approval.

**V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED**

The Eleventh Circuit recognizes the strong public policy favoring the pretrial settlement of class action lawsuits. *See e.g. In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) and *Cotton*, 559 F.2d at 1331. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *Id.* But in assessing those certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

**A.  The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)**

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Each of the requirements is met here.

**1.   Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). No specific number is required to satisfy numerosity. However, less than twenty-one members is generally inadequate. *See, e.g.*, *Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir.1992) (citations omitted). Impracticability depends on the facts of each case. *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Here, the numerosity requirement is readily met because it is difficult or inconvenient to join all members of the proposed Class and Wrigley sold the products nationwide. Wrigley admits that the element of numerosity would be met in this case. *See* Declaration of Cullin Avram O'Brien, filed under seal on January 22, 2010, Ex. J (Defendant's Objections and Reponses to Plaintiff's First Set of Requests for Admission, at p. 5). Accordingly, the numerosity requirement is satisfied.

### 2. Commonality

The commonality requirement is met if there is at least one question of law or fact common to the members of the Class. Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where questions of law refer to standardized conduct by the defendant toward members of the proposed class. *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). "The Rule 23(a) requirement of commonality is not high, requiring only that resolution of the common questions affect all or a substantial number of the class members." *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 674 (M.D. Ga. 1996).

Because the allegations of wrongdoing here involve standardized Product packages containing a uniform "germ kill" message, the Class Members' claims necessarily involve common questions of law and fact. *See Weiner v. Dannon Co., Inc.*, 255 F.R.D. 658, 664-65 (C.D. Cal. 2009) ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products.").

### 3. Typicality

The Rule 23(a) typicality requirement ensures that the class representative has the same interests as the class. That is, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); s*ee also Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984). The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig*., 170 F.R.D. 524, 532 (M.D. Fla. 1996). Similarly, typicality does not require that all putative class members share identical claims. Rather, all that is required is that the claims of the named plaintiff have the same essential characteristics as the class at large. "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Here, Plaintiff and Class members were exposed to uniform misrepresentations on the Product labeling. Plaintiff and Class members also seek relief for the same alleged wrongful

conduct, *i.e.*, misrepresenting the "germ kill" qualities of the Product.  The typicality requirement is met.

### 4.   Adequacy of Representation

Finally, Rule 23(a) also requires a showing that the representative party will fairly and adequately protect the interests of the class. This requirement has two components: (1) the proposed representative has interests in common with, and not antagonistic to, the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987); *Hamilton Partners, Ltd. v. Sunbeam Corp.*, No. 99-CV-8275, 2001 WL 34556527, at *3 (S.D. Fla. July 3, 2001); *see also Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 578-579 (M.D. Fla. 2006).

Adequacy is plainly met in this case.  First, there is no conflict between Plaintiff's interests and the interests of the Class members.  Plaintiff and the members of the Class assert the same legal claims, and their injuries arise out of the same course of conduct by Wrigley during the Settlement Class Period.  Second, the Class Counsel are qualified and experienced in class action litigation.  *See* Blood Decl., Exs. 1-3 (Firm Resumes of Class Counsel).  Further, Class Counsel have performed extensive work to date in identifying and investigating potential claims in this Litigation, in working with consultants to develop a detailed understanding of the testing of the product and MBE and the scientific basis (or lack thereof) of the "germ kill" message, in preparing a detailed class action complaint, in successfully opposing Wrigley's motion to dismiss, in briefing a motion for class certification, and in successfully mediating and negotiating the proposed Settlement.  *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself").

### B.  The Settlement Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3)

In addition to the requirements of Rule 23(a), in the context of the proposed Settlement, the Parties do not dispute that Plaintiff also satisfies the requirements of Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.  As set forth below, this Litigation meets the criteria set forth in Rule 23(b)(3).  Accordingly, this Court should conditionally certify the Class proposed by the Parties.

#### 1.   Common Questions Predominate Over Individual Issues

Common questions of law or fact predominate over individual questions when the issues in the class action are subject to generalized proof that applies to the case as a whole. *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud."). Thus, in deciding whether common questions predominate under Rule 23(b)(3), the focus is generally on whether there are common liability issues that may be resolved on a class-wide basis. *See, e.g.*, *Klay v. Humana*, 382 F.3d 1241, 1269 (11th Cir. 2004). "'[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *Busby*, 513 F.3d at 1324.

Predominance exists here.  As discussed above, virtually all of the issues of law and fact are identical among Class members.  The central issue for every Class member is whether Wrigley had substantiation for its claim that the Product "kills germs" and whether that misrepresentation was likely to deceive a reasonable consumer.   Under these circumstances, the requirements of Rule 23(b)(3) are present.  *See Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package).

#### 2.   A Class Action Is The Superior Method to Settle This Controversy

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (A) the class members'

interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001); *Amchem*, 521 U.S. at 617 (same); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (same).

An assessment of the Rule 23(b)(3) "superiority" factors show that a class action is the preferred procedure in this case.  The amount of damages suffered by the vast majority of Class members is not large.  *Wiener*, 255 F.R.D. at 671.  It is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class members to pursue their claims against Wrigley on an individual basis.  *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Additionally, the difficulties of managing a class action are vitiated by the fact of this Settlement. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.

## VI.    THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it reaches the parties affected and

conveys the required information.  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F. 2d 1088, 1104-05 (5th Cir. 1977) (the class members' "substantive claims [must] be adequately described [and] the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment.").

The proposed Class Notice – collectively, the long form Notice of Class Action Settlement and the Publication Notice – easily satisfy these requirements.  *See* Stipulation, §§ V.A.-B.  The Class Notice is written in simple terminology and includes: (1) basic information about the Litigation; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Wrigley that could have been litigated in this Litigation will be released if the Class member does not opt out from the Settlement; (6) the names of Class Counsel and information regarding requested attorneys' fees; (7) the Settlement Hearing date; (8) an explanation of eligibility for appearing at the Settlement Hearing; and (9) the Settlement Website.  *See* D.E. Nos. 84-3 (long form notice) and 84-4 (Publication Notice).

The contents of the proposed Class Notice are more than adequate.  The Class Notice provides Class members with sufficient information to make an informed and intelligent decision whether to object to the Settlement.  As such, it satisfies the content requirements of Rule 23.  *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

Additionally, the proposed plan to disseminate the Class Notice satisfies all due process requirements.  To facilitate implementation of the Class Notice and administer the claims process, the Parties request that the Court approve Garden City as Class Action Settlement Administrator, to disseminate Class Notice after the Court preliminarily approves the Settlement.  Garden City is a

- 18 -

nationally recognized administrator for class action settlement and legal notice programs.  Over its twenty-five years, Garden City has processed tens of millions of claims, mailed more than 260 million notices, handled over three million class claims, and distributed billions of dollars.  *See* http://www.gardencitygroup.com (last visited June 1, 2010).

Because Wrigley does not sell the Product directly to consumers, and thus there is no way to identify the vast majority of individual Class members, Wrigley does not have mailing addresses for Class members.  Based upon Wrigley's media plans for the products, Garden City was able to design a notice program that maximized exposure to Class members. Thus, the Publication Notice will be published in the targeted sources noted in the Media Plan (D.E. No. 84-7) and Section III.D. above. To facilitate the claims process, the Publication Notice itself includes the simple Claim Form for Class members to complete and submit. Additionally, Class Notice and Claim Forms will be available through the Settlement Website (www.WrigleySettlement.com) maintained by the Class Action Settlement Administrator and on Class Counsel's websites.

In sum, the contents and dissemination of the proposed Class Notice constitute the best notice practicable under the circumstances and fully comply with the requirements of Rule 23.

## VII.    THE PROPOSED SCHEDULE OF EVENTS

In order to provide the broadest possible coverage, the Parties have agreed to publish Class Notice in a targeted group of nationwide publications.  The Publication Notice must contain the relevant dates for Class members.  Lead times for placements of notice in the targeted publications run up to three months.  Thus, the Parties' proposed schedule depends upon the Court's approval and scheduling of the Settlement Hearing.  If the Court grants preliminary approval and sets a date for a Settlement Hearing, the Parties can provide the Clerk with dates in accordance with the Settlement process.  Assuming the Court grants preliminary approval by June 14 or earlier, the earliest date for a Settlement Hearing would be November 1, 2010.  Notice to the Class would be completed by September 2, 2010, (60 days before the Settlement Hearing) and the last day for Class members to opt-out, object or file notices of appearance would be October 2, 2010 (30 days before the

Settlement Hearing), and the Parties' submission in support of final approval would be due October 25, 2010 (7 days before the Settlement Hearing).

If preliminary approval is not granted by June 14, 2010, Plaintiff will provide dates by which these other actions will occur, based upon any change to the dates by which the Media Plan can be implemented.  Accordingly, the Parties request that the Court schedule a Settlement Hearing on November 1, 2010, or as soon thereafter as the Court's schedule permits.

## VIII.   CONCLUSION

For the reasons set forth above, the Parties respectfully request the Court enter the [Proposed] Order attached as Exhibit F to the Stipulation of Settlement (D.E. No. 84-6): (1) certifying the Class; (2) designating Plaintiff Smith as Class representative; (3) appointing Robbins Geller Rudman & Dowd LLP, Blood Hurst & O'Reardon, LLP, and John Patterson as Class Counsel; (4) grant preliminary approval of the Settlement; (5) approving the proposed Class Notice plan and directing that it be implemented; (6) appointing Garden City Group, Inc. as Class Action Settlement Administrator; and (7) scheduling a final Settlement Hearing.

DATED:  June 4, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
JONATHAN M. STEIN
Florida Bar No. 009784
CULLIN A. O'BRIEN
Florida Bar No. 0597341


*s/Jonathan M. Stein*
JONATHAN M. STEIN

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jstein@rgrdlaw.com
cobrian@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
rachelj@rgrdlaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BALKAN & PATTERSON, LLP
JOHN PATTERSON
Florida Bar No. 023930
601 S. Federal Highway, Suite 302
Boca Raton, FL  33432
Telephone:  561/750-9191
561/750-1574 (fax)
john@balkanpatterson.com

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 4, 2010.

*s/ Jonathan M. Stein*
JONATHAN M. STEIN
ROBBINS GELLER RUDMAN & DOWD LLP
E-mail: jstein@rgrdlaw.com