UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-CIV-COHN/SELTZER

CAROL D. SMITH, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

WM. WRIGLEY JR. COMPANY,

    Defendant.
_____/

## ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**THIS CAUSE** is before the Court on the parties' Joint Request for Preliminary Approval of Class Action Settlement [DE 85] ("Motion"). The Court has carefully considered the Motion, the record in this case and is otherwise advised in the premises.

### I. BACKGROUND

This case is based on Defendant Wrigley's claim "that its Eclipse® gum brand is 'scientifically proven to help kill the germs that cause bad breath' . . . ." Compl. ¶ 3. Plaintiff alleges that "[t]his claim is false, deceptive and likely to mislead." Id.

In June 2008, "Wrigley released a reformulated version of Eclipse® gum and touted it as 'the first and only brand to include Magnolia Bark Extract, a natural ingredient scientifically proven to kill the germs that cause bad breath.'" Id. ¶ 12. The Complaint alleges that "Wrigley has engaged in an extensive and comprehensive nationwide advertising campaign, spending millions of dollars to convey this deceptive message to consumers throughout the United States." Id. ¶ 5.

Plaintiff asserts that "as a result of this deceptive advertising campaign," Wrigley (1) "has elevated Eclipse® gum into one of the top sellers in the product category," id. ¶ 6; and (2) "has been able to charge a premium price for Eclipse® gum over other chewing gum products, including other Wrigley chewing gum products." Id. ¶ 7.

Plaintiff brings two causes of action.

> Count I of the Complaint asserts a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, ("FDUTPA"), alleging, among other things, that "Plaintiff and the Class have been aggrieved by Wrigley's unfair and deceptive practices in that they paid for Eclipse® gum." [Compl. ¶¶ 49-58]. Count II of the Complaint asserts a claim for breach of express warranty in that . . . Wrigley falsely warrants that Eclipse® gum is "scientifically proven" to help kill germs that cause bad breath. [Compl. ¶¶ 59-63].

DE 25 at 1.

Defendant filed a Motion to Dismiss the Complaint in its entirety. First, Defendant argued that Plaintiff's FDUTPA claim "fails as a matter of law because the Complaint makes only conclusory allegations that advertising statements about Wrigley Eclipse gum caused her to suffer 'actual damages' or be 'aggrieved.'" DE 20 ¶ 1. Second, Defendant argued that Plaintiff's claim for breach of express warranty fails for two independent reasons: (1) Plaintiff is not "in privity" with Defendant, and (2) Plaintiff fails to allege a legally cognizable injury. Id. ¶ 2.

On October 1, 2009, the Court denied the Motion to Dismiss. In so ruling, the Court pointed out that the Complaint alleges that the consumer was exposed to and saw the manufacturer's advertising claims and purchased the gum in reliance on these claims. In addition, the Complaint alleges that as a result of the misleading messages, the manufacturer had been able to charge a price premium for the gum. Accepting

these allegations as true, the Court held that the Complaint states a claim under the FDUTPA. The Court found that these allegations also state a valid claim for breach of express warranty claim. Significantly, the express warranty the Defendant allegedly breached was contained on the packaging of the gum, and the Complaint alleges that Plaintiff relied on the warranty when purchasing the gum.

On June 1, 2010, the parties filed a proposed Stipulation of Settlement [DE 84] ("Proposed Settlement") which contains the following terms:

- Defendant must cease from using the "germ killing" advertising and labeling.

- Defendant shall pay up to $6 million in trust to a third party institution to be selected by Defendant and approved by Class Counsel to establish an interest bearing fund for payments.

- The Proposed Class means all persons who purchased in the United States Eclipse gum or mint product labeled with a "NATURAL GERM KILLING" message ("Product") at any time up to the date notice is provided to the Class.

- The Proposed Settlement Class Period means the first day the Product was available for retail purchase in the United States up to and including the last date by which Class Notice is to be provided to the Settlement Class Members.

- Class Counsel agrees to make, and Defendant agrees not to oppose, an application for the Fee and Expense Award in the Litigation not to exceed a total of $2 million. Defendant further agrees not to oppose a Fee and Expense Award of reasonable, actual out-of-pocket expenses not to exceed $75,000.

- Defendant also agrees that Plaintiff may seek a class representative incentive award for Plaintiff in an amount of $10,000.

The Motion requests that the Court grant preliminary approval of the Proposed Settlement and conditional certification of the Proposed Class.

3

## II. DISCUSSION

### 1. Preliminary Approval of Proposed Settlement

Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing. Holman v. Student Loan Xpress, Inc., 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009); see also Manual for Complex Litigation ("MCL"), § 21.632 (4th ed. 2006); Jones v. Commerce Bancorp Inc., 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class. Jones, 2007 WL 2085357 at *2. The factors considered are (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. Bennet v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).[1]

"Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." Jones, 2007 WL 2085357 at *2. Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the

---

[1] The Court may also consider the judgment of experienced counsel. See Elkins v. Equitable Life Ins. of Iowa, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998); Warren v. City of Tampa, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988). Further, the Court's judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement. See United States v. City of Miami, 614 F.2d 1322, 1344 (5th Cir. 1980).

range of reason. Id.; see also In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The record herein supports a finding that the Proposed Settlement should be preliminarily approved. The agreement appears to be the result of good faith negotiations. The parties engaged in two full-day mediation sessions and numerous telephonic mediation sessions conducted by Rodney A. Max. Moreover, the parties engaged in extensive discovery, including the production and review of several thousand pages of documents and significant work with expert witnesses and consultants. The parties also engaged in briefing issues in connection with Defendant's motion to dismiss and Plaintiff's motion for class certification.

As the parties point out, "[l]itigating this class action through trial would undoubtedly be time-consuming and expensive." DE 85 at 12. Further, the Proposed Settlement "puts an end to Wrigley's alleged deceptive practices at the heart of this Litigation and provides economic benefits to Class members who submit eligible claims." Id. at 13. Accordingly, the Proposed Settlement is preliminarily approved.

2.     **Conditional Class Certification**

"A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" Borcea v. Carnival Corp., 238 F.R.D. 664, 671 (S.D. Fla. 2006) (quoting Woodward v. NOR-AM Chem. Co., 1996 WL 1063670, *14 (S.D. Ala. May 23, 1996)); see also Amchem Products, Inc. v. Windsor, 521 U.S. 591, 618-20 (1997). Nevertheless, the requirements of Rule 23 that serve "to protect absentees by blocking unwarranted or overbroad class definitions [ ] demand undiluted, even heightened, attention in the

settlement context." Amchem, 521 U.S. at 620. On the other hand, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Id. In these circumstances, district courts may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23, see, e.g., In re Insurance Brokerage Antitrust Litigation, 2007 WL 2589950, at *2 (D.N.J. Sept. 4, 2007),[2] or render a final decision as to the appropriateness of class certification. See Jones, 2007 WL 2085357 at *3-4.

In order for the class to be certified, Plaintiff must establish the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir. 1997); see also Amchem, 521 U.S. 591. Here, the parties seek class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

> Rule 23 provides in pertinent part:
>
> (a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

---

[2] See also MCL at § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).").

> . . .
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23.

## A. Rule 23(a) Requirements

### i. Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity inquiry is not focused solely on the number of proposed class members, but instead "whether joinder of proposed class members is impractical." Armstead v. Pingree, 629 F.Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000). The Eleventh Circuit has held that "[g]enerally, 'less than twenty-one is inadequate, more than forty adequate.'" Cheney v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, there is no question that the Proposed Class is so numerous that joinder of all class members is impracticable. Accordingly, the Court finds that the numerosity requirement is satisfied.

### ii. Commonality

Rule 23(a)'s commonality prerequisite requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Yet it "does not require that all of the questions

of law or fact raised by the case be common to all the plaintiffs." Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004). Most significantly, "a class action must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). The Court finds that commonality is met "[b]ecause the allegations of wrongdoing here involve standardized Product packages containing a uniform 'germ kill' message." DE 85 at 14.

       iii. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984), cert. denied, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); see also CV Reit, Inc. v. Levy, 144 F.R.D. 690, 696 (S.D. Fla. 1992). As the Supreme Court has noted, the "commonality and typicality requirements of Rule 23(a) tend to merge." See General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982); see also Griffin v. Dugger, 823 F.2d 1476, 1489 n.31 (11th Cir. 1987). Again, because the Plaintiff and class members were exposed to uniform misrepresentations, the Court finds that the typicality requirement is satisfied.

### iv. Adequacy of Representation

The Court must be satisfied that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement applies to both the named plaintiffs and their counsel. London v. Wal-Mart, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003). The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987), cert. denied, 485 U.S. 959 (1988). "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted). With regards to the latter inquiry, proposed class counsel must demonstrate that he possesses both the experience and qualifications necessary to conduct this litigation. The Court is aware of no conflict between Plaintiff's interests and those of Class Counsel and Class Counsel is well-suited to conduct this litigation. Accordingly, the adequacy requirement is easily satisfied in this case.

### B. Rule 23(b) Requirements

The parties seek class certification under Rule 23(b)(3), arguing that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. To be certified under Rule 23(b)(3), an action must satisfy both the predominance and superiority requirements.

i. Predominance

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 594. In other words, "'the issues in the class action that are subject to generalized proof and, thus, applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989)). The predominance requirement focuses on legal and factual inquiries that qualify each member's claim as a controversy, and it is "far more demanding" than the commonality requirement. Id.

Applying this standard to the action, the Court finds that all of the claims of the named Plaintiff and the Proposed Class are based on the same legal theories and the same uniform advertising. Therefore, common issues substantially predominate over any individual issues.

ii. Superiority

In many respects, the predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims. Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004). Here, the proposed class members' claims are predicated on a common set of facts and concern the same product and advertising. Therefore, a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy. Moreover, if the Proposed Class is not certified, it is likely that potential

class members would lack incentive to pursue their claims individually due to the small awards involved. Accordingly, this Court is convinced that the requirements of Rule 23(b)(3) have been met.

### 3. Proposed Class Notice

The parties also seek the Court to approve their proposed Class Notice Program and proposed Class Notice. The proposed Class Notice reasonably informs potential class members of: (1) the litigation, the class and the essential terms of the Proposed Settlement; (2) the potential costs and attorney's fees; (3) how to participate in the settlement; (4) information about this Court's final approval procedure; and (5) how to challenge or opt-out of the settlement.

Rule 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Here, the parties plan on the following course of action to disseminate the Class Notice:

> To facilitate implementation of the Class Notice and administer the claims process, the Parties request that the Court approve Garden City as Class Action Settlement Administrator, to disseminate Class Notice after the Court preliminarily approves the Settlement. Garden City is a nationally recognized administrator for class action settlement and legal notice programs. Over its twenty-five years, Garden City has processed tens of millions of claims, mailed more than 260 million notices, handled over three million class claims, and distributed billions of dollars.

DE 85 at 19. The Court approves Garden City Group, Inc. as Class Action Settlement Administrator.

"Because Wrigley does not sell the Product directly to consumers, and thus there is no way to identify the vast majority of individual Class members, Wrigley does not have mailing addresses for Class members. Based upon Wrigley's media plans for the products, Garden City was able to design a notice program that maximized exposure to

11

Class members." Id. The parties indicate that the Class Notice will be provided in two widely-read magazines as well as several popular websites. The Court finds that the foregoing satisfies the requirements of Rule 23(e)(1).

### III. CONCLUSION

Based on the above reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The parties' Joint Request for Preliminary Approval of Class Action Settlement [DE 85] is **GRANTED**.

    a. The Court preliminarily approves the Proposed Settlement.

    b. The Court conditionally certifies a Class consisting of all persons who purchased in the United States the Product at any time up to the date notice is provided to the Class. Excluded from the Class are Defendant's officers, directors and employees and those who purchased the product for the purpose of resale.

    c. Plaintiff Carol D. Smith is designated as Class Representative.

    d. Robbins Geller Rudman & Dowd LLP, Blood Hurst & O'Reardon, LLP, and John Patterson are appointed as Class Counsel.

    e. The proposed Class Notice is approved.

    f. Garden City Group, Inc. is appointed as Class Action Settlement Administrator.

2. Class Notice shall be completed by **September 3, 2010**.

3. All opt-outs from, motions to intervene in, and objections to the Proposed Settlement shall be made on or before **October 4, 2010**.

4.  The parties shall file their final submission in support of approval on or before **October 29, 2010**.

5.  The Final Fairness Hearing will be conducted before the Honorable Judge James I. Cohn, U.S. District Court for the Southern District of Florida, 299 East Broward Boulevard, Fort Lauderdale, Florida, in Courtroom 203E on **November 5, 2010** at 9:00 a.m.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 15 day of June, 2010.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record