UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60646-Civ-Cohn/Seltzer

CAROL D. SMITH, on Behalf of Herself and )
All Others Similarly Situated,            )
                                          )
                         Plaintiff,       )
                                          )
        vs.                               )
                                          )
WM. WRIGLEY, JR. COMPANY,                 )
                                          )
                         Defendant.       )
                                          )
_____  )

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES AND EXPENSE**

## TABLE OF CONTENTS

I.      INTRODUCTION ..............................................................................................................1

II.     HISTORY OF THE LITIGATION ..................................................................................4

      A.      Initial Investigations and Filings..........................................................................4

      B.      The Parties Conducted Substantial Discovery – Producing and Reviewing
            Over 360,000 Pages of Documents........................................................................4

      C.      Defendant's Motion to Dismiss .............................................................................5

      D.      Plaintiff's Motion for Class Certification ..............................................................5

      E.      The Settlement Negotiations, Preliminary Approval, and Class Notice................6

III.    THE SETTLEMENT TERMS..........................................................................................7

      A.      Settlement Relief ...................................................................................................7

            1.      Cash Payments ...........................................................................................7

            2.      Injunctive Relief.........................................................................................8

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED................................................9

V.      THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ..............................9

      A.      The Standard for Final Approval of a Class Settlement .......................................10

      B.      The Settlement Is Free From Fraud and Collusion and Is the Product of
            Arms-Length Negotiations...................................................................................11

      C.      The Likelihood of Success on the Merits Weighed Against the Amount
            and Form of the Relief Offered in the Settlement, and the Risks, Expense,
            and Delay of Further Litigation All Support Approval of This Settlement...........13

      D.      The Judgment of Experienced Counsel Who Have Competently Evaluated
            the Strength of Their Proofs Supports Approval of This Settlement.....................14

      E.      The Amount of Discovery Completed and the Character of the Evidence
            Uncovered Supports Approval of This Settlement ...............................................15

      F.      Whether the Settlement Is Fair to the Unnamed Class Members ..........................16

      G.      Opt-Outs and Objections Raised by Class Members.............................................16

i

VI.    CLASS COUNSELS' UNOPPOSED REQUEST FOR FEES AND REIMBURSEMENT OF LITIGATION EXPENSES SHOULD BE APPROVED .........17

    A.    Courts Give Substantial Deference to the Agreement Between the Parties About Fees in Class Action Settlements .................................................................17

    B.    Courts Have Regularly Approved Negotiated Fee Arrangements as Part of Class Action Settlements .....................................................................................19

    C.    Plaintiffs' Counsel Are Entitled to Be Compensated for Creating a Common Benefit for the Class...................................................................................20

        1.    Under the Common Benefit Doctrine, the Appropriate Method of Calculating Attorneys' Fees Is as a Percentage of the Overall Class Benefit.....................................................................................................21

        2.    The Requested Fees Are Reasonable and Warranted ...............................22

            a.    The Value of the Benefit Obtained ................................................23

            b.    The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action ...........................................................23

            c.    The Public Interest ........................................................................26

            d.    The Complexity of the Litigation ..................................................27

            e.    The Professional Skill and Standing of Respective Counsel .........27

            f.    The Requested Fees Reflect the Market Rate in Other Complex, Contingent Litigation ...................................................27

    D.    Class Counsels' Litigation Expenses Should Be Reimbursed..............................32

VII.    REPRESENTATIVE PLAINTIFF IS ENTITLED TO AN INCENTIVE AWARD........32

VIII.    CONCLUSION.................................................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Lightolier, Inc.*,
　　50 F.3d 1204, 1255 (3d Cir. 1995)................................................................32

*Access Now, Inc. v. Claire's Stores, Inc.*,
　　2001 U.S. Dist. LEXIS 21481 (S.D. Fla. 2001)................................................10

*Adams v. Inter-Con Sec. Sys., Inc.*,
　　No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007)......................12

*Amchem Products v. Windsor*,
　　521 U.S. 591, 614 (1997)..................................................................9

*Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.*,
　　211 F.R.D. 457, 467 (S.D. Fla. 2002)....................................................2, 9, 10

*Behrens v. Wometco Enters., Inc.*,
　　118 F.R.D. 534, 538 (S.D. Fla. 1988).......................................... *passim*

*Bello v. Integrated Res., Inc.*,
　　No. 88 Civ. 1214 (CSH), 1990 U.S. Dist. LEXIS 16240, at *7 (S.D.N.Y. Nov.
　　30, 1990) ..............................................................................29

*Bennett v. Behring Corp.*,
　　737 F.2d 982, 986 (11th Cir. 1984) ..........................................................9, 10

*Berger v. Compaq Computer Corp.*,
　　No. 98-1148 (N.D. Tex. Nov. 22, 2002)....................................................31

*Boeing Co. v. Van Gemert*,
　　444 U.S. 472, 478 (1980)..................................................................20

*Bonner v. City of Prichard*,
　　661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) ..............................................1

*Brotherton v. Cleveland*,
　　141 F. Supp. 2d 894, 906 (S.D. Ohio. 2001) ................................................17

*Camden I Condo. Ass'n v. Dunkle*,
　　946 F.2d 768, 774 (11th Cir. 1991) ..........................................21, 22, 23, 29

*Camp v. Progressive Corp.*,
　　No. Civ.A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079, at *8 (E.D. La.
　　Sept. 23, 2004) ..........................................................................33

iii

*Carrabba v. Randalls Food Mkts., Inc.,*
191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) ...................................................................33

*Cotton v. Hinton,*
559 F.2d 1326, 1331 (5th Cir. 1977) ..................................................................1, 9, 10

*Deposit Guar. Nat'l Bank v. Roper,*
445 U.S. 326, 338-39 (1980) .........................................................................................21

*Di Giacomo v. Plains All Am. Pipeline,*
Civil Action No. H-99-4137 ..........................................................................................31

*Diaz v. Hillsborough County Hosp. Auth.,*
No. 8:90-CV-120-T-25B, 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000) .........................29

*Dowdell v. Apopka,*
698 F.2d 1181, 1192 (11th Cir. 1983) (quoted in *Texas State Teachers Ass'n
v. San Antonio Indep. Sch. Dist.*, 584 F. Supp. 61, 66 (W.D. Tex. 1983)) .......................32

*Dukes v. Wal-Mart,*
509 F. 3d 1168, 1176 (9th Cir. 2007) ............................................................................13

*Eisen v. Carlisle & Jacqueline,*
417 U.S. 156, 161 (1974)...............................................................................................26

*Elkins v. Equitable of Iowa,*
No. 96-296-CIV-T-17B, 1998 U.S. Dist. LEXIS 1557, at *99 (M.D. Fla. Jan
28, 1998) ......................................................................................................................18

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43, 54 (2d Cir. 2000).......................................................................................24

*Harman v. Lyphomed, Inc.,*
945 F.2d 969, 976 (7th Cir. 1991) ..................................................................................24

*Harris v. Intel Corp.,*
No. C-00-1528-CW(EMC) (N.D. Cal. July 15, 2003)......................................................31

*Harris v. Marhoefer,*
24 F.3d 16, 19 (9th Cir. 1994) .......................................................................................32

*Hensley v. Eckerhart,*
461 U.S. 424, 437 (1983)..........................................................................................19, 23

*Howes v. Atkins,*
668 F. Supp. 1021 (E.D. Ky. 1987) ................................................................................29

*In re Aetna Inc. Sec. Litig.*,
  Civil Action MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4,
  2001) ...................................................................................................................30

*In re APAC Teleservices Inc. Sec. Litig.*,
  No. 97-CIV-9145(BJS) (S.D.N.Y. Dec. 11, 2001) (33-1/3% fee awarded) .....................31

*In re Belmac Corp. Sec. Litig.*,
  Case No. 92-1814-CIV-T-23-(C), 1994 U.S. Dist. LEXIS 21584 (M.D. Fla.
  Apr. 6, 1994) .........................................................................................................29

*In re Catfish Antitrust Litig.*,
  939 F. Supp. 493, 504 (N.D. Miss. 1996) ......................................................................33

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566, 568-70 (7th Cir. 1992) .................................................................19, 28

*In re Domestic Air Transp.*,
  148 F.R.D. at 312-13..................................................................................14, 20, 21

*In re Drkoop.com.*,
  No. 00-CA-427-JRN (W.D. Tex. Nov. 14, 2001) (33-1/3% fee awarded)......................31

*In re Employee Benefit Plans Sec. Litig.*,
  No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ....................................11

*In re FirstPlus Fin. Group, Inc.*,
  Master File No. 3:98-CV-2551-M (N.D. Tex. Oct. 14, 2003).........................................31

*In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder]
  Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980).......................................................29

*In re Future Healthcare Sec. Litig.*,
  Master File No. C-1-95-180 (S.D. Ohio Nov. 28, 2000) (33-1/3% fee
  awarded).............................................................................................................17, 31

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768, 813 (3d Cir. 1995)......................................................................................15

*In re Granada P'ship Sec. Litig.*,
  803 F. Supp. 1236, 1247 (S.D. Tex. 1992) .....................................................................33

*In re Home Shopping Network Sec. Litig.*,
  Case No. 87-428-T-13(A) (M.D. Fla. 1991)....................................................................30

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166, 197 (E.D. Pa. 2000) ..............................................................................30

*In re InaCom Corp. Sec. Litig.*,
　　Master File No. 00-701 (D. Del. Jan 14, 2003) (33-1/3% fee awarded) ..........................31

*In re Indep. Energy Holdings PLC*,
　　No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ..............12

*In re Int'l Recovery Corp. Sec. Litig.*,
　　Case No. 92-1474-CIV-ATKINS (S.D. Fla. 1994) ........................................................29

*In re Lease Oil Antitrust Litig. (No. II)*,
　　186 F.R.D. 403, 449 (S.D. Tex. 1999), *reversed on other grounds*, 570 F.3d
　　244 (5th Cir. 2009)..........................................................................................................33

*In re Lifescan, Inc. Consumer Litig.*,
　　Case No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002)........................................................31

*In re Mego Fin. Corp. Sec. Litig.*,
　　213 F.3d 454, 463 (9th Cir. 2000) .................................................................................31

*In re Nationwide Fin. Servs. Litig.*,
　　No. 08-00249, 2009 U.S. Dist. LEXIS 126962, at *20 (S.D. Ohio Aug. 18,
　　2009) ...............................................................................................................................16

*In re Painewebber Ltd. P'ships Litig.*,
　　171 F.R.D. 104, 129 (S.D.N.Y. 1997) ..........................................................................13

*In re Perfumania, Inc. Sec. Litig.*,
　　Case No. 92-1490-CIV-MARCUS (S.D. Fla. 1993) ........................................................29

*In re Prison Realty Sec. Litig.*,
　　Civil Action No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb.
　　9, 2001) ...........................................................................................................................31

*In re Prudential Sec. Ltd. P'ship Litig.*,
　　912 F. Supp. 97 (S.D.N.Y. 1996)...................................................................................30

*In re Royce Lab., Inc. Sec. Litig.*,
　　Case No. 92-0923-CIV-MOORE (S.D. Fla. 1993)...........................................................29

*In re Sound Advice, Inc. Sec. Litig.*,
　　Case No. 92-6457-CIV-UNGARO-BENAGES (S.D. Fla. 1994) ....................................29

*In re Sumitomo Copper Litig.*,
　　74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................................................30

*In re Sunbeam Sec. Litig.*,
　　176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) ......................................................21, 25, 29

*In re U.S. Interactive, Inc. Sec. Litig.*,
    Case No. 01-CV-522 (E.D. Pa. Oct. 20, 2003) ................................................................31

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......................12

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714, 720 (5th Cir. 1974) .....................................................................17, 19, 22

*Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *cert. dismissed sub nom.*,
    *Ledbetter v. Jones*,
    453 U.S. 950 (1981)................................................................................................24

*Kaser v. Swann*,
    Case No. 90-607-CIV-Orl-3A18 (M.D. Fla. 1993) ........................................................29

*Kirchoff v. Flynn*,
    786 F.2d 320, 323 (7th Cir. 1986) ........................................................................28, 29

*Leverso v. Southtrust Bank Nat'l Ass'n*,
    18 F.3d 1527, 1530 n.6 (11th Cir. 1994) ...................................................................10

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102, 112 (3d Cir. 1976)........................................................................24

*Lipuma v. Am Express Co.*,
    406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ..................................................................9

*Lonardo v. Travelers Indem. Co.*,
    No. 1:06-CV-962, 2010 WL 1416698, at *37-38 (N.D. Ohio Mar. 31, 2010)................15

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819, 829 (D. Mass. 1987) .........................................................................19

*Manchaca v. Chater*,
    927 F. Supp. 962, 967 (E.D. Tex. 1996)........................................................................12

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660, 669 (M.D. Ala. 1988) ......................................................................14

*MCI Commc'n Corp. v. AT&T*,
    708 F.2d 1081, 1166-67 (7th Cir. 1983) .......................................................................26

*McKittrick v. Gardner*,
    378 F.2d 872 (4th Cir. 1967) ...................................................................................25

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)....................................................................................................20

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235, 239 (S.D.N.Y. 1993).....................................................................32

*Muehler v. Land O'Lakes, Inc.*,
   617 F. Supp. 1370, 1375-76 (D. Minn. 1985)............................................................21

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
   No. 77 C 39, 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984)...............................28

*Purdie v. Ace Cash Express, Inc.*,
   No. Civ.A. 301CV1754, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) ............33

*Ressler v. Jacobson*,
   149 F.R.D. 651, 656 (M.D. Fla. 1992).......................................................24, 25, 29

*Robinson v. Ford Motor Co.*,
   No. 04-00844, 2005 U.S. Dist. LEXIS 11673, at *16-*17 (S.D. Ohio June 15,
   2005) .........................................................................................................................17

*Silver v. UICI*,
   No. 3:99CV2860-L (N.D. Tex. Mar. 3, 2003)............................................................31

*Skelton v. Gen. Motors Corp.*,
   860 F.2d 250, 258 (7th Cir. 1988) ............................................................................24

*Smith v. Wm. Wrigley Jr. Co.*,
   663 F. Supp. 2d 1336 (S.D. Fla. 2009) .......................................................................5

*Tapken v. Brown*,
   Case No. 90-691-CIV-MARCUS (S.D. Fla. 1995) ....................................................29

*Thurber v. Mattel, Inc.*,
   No. CV-99-10368-MRP(CWx) (C.D. Cal. Oct. 1, 2003)...........................................32

*U.S. Football League v. NFL*,
   644 F. Supp. 1040, 1042 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988).............25

*Van Gemert v. Boeing Co.*,
   516 F. Supp. 412 (S.D.N.Y. 1981)............................................................................29

*Walters v. Atlanta*,
   652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir.
   1986) .........................................................................................................................24

*Warren v. City of Tampa*,
　　693 F. Supp. 1051, 1060 (M.D. Fla. 1988) ........................................................14

*Warstadt v. Hastings Entm't, Inc.*,
　　Civil Action No. 2:00-CV-089-J (N.D. Tex. Mar. 10, 2003) .............................31

*Waters v. Int'l Precious Metals Corp.*,
　　190 F.3d 1291, 1294-96 (11th Cir. 1999) ..................................................17, 29

*West Virginia v. Chas. Pfizer & Co.*,
　　314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir.
　　1971) ...................................................................................................................25

*Whitford v. First Nationwide Bank*,
　　147 F.R.D. 135, 140 (W.D. Ky. 1992)................................................................10

*York v. Ala. State Bd. of Ed.*,
　　631 F. Supp. 78, 86 (M.D. Ala. 1986) ................................................................24

*Zinman v. Avemco Corp.*,
　　No. 75-1254, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978)..............29

## I.      INTRODUCTION

With the extensive assistance of an experienced mediator, the Parties have entered into a nationwide Settlement that provides substantial monetary and non-monetary benefits to Settlement Class Members who purchased Wm. Wrigley, Jr. Company's ("Wrigley") falsely advertised Eclipse® gum and mints (the "Product").[1]  As memorialized in the Stipulation of Settlement, the Settlement provides significant remediation, addressing the two aims of this Litigation – monetary relief (from a Settlement Fund) for Class members who purchased the Products at issue, and an end to the challenged advertisements.  The Settlement is an excellent one.

"The compromise of complex litigation is encouraged by the courts and favored by public policy."  4 *Newberg on Class Actions* §11:41 (4th ed.).  Further, it is well settled that judicial policy favors voluntary settlement for resolution of class-actions.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977);[2] *see also Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988).[3]  "Settlement has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice. . . ." *Id.*    "Litigants should be encouraged to determine their respective rights between themselves." *Id.* (quoting *Cotton,* 559 F.2d at 1331).  "Moreover, where, as here, the [settlement]

---

[1]      All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation of Settlement filed June 1, 2010, ("Stipulation" or "Settlement") signed by the Parties on May 26-27, 2010.  *See* Docket Entry ("D.E.") No. 84.

[2]      Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[3]      Emphasis is added and citations are omitted, unless otherwise noted.

previously has been preliminarily approved, the [settlement] is 'presumptively reasonable.'" *Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002). For the reasons stated herein, this Court should grant final approval of the Settlement.

Class Counsel were able to force Wrigley to provide the Class the very relief Class Counsel sought when they initiated this Litigation. That is, from the outset of this Litigation, Class Counsel sought both compensation for the Class' purchases of the Products and injunctive relief prohibiting Wrigley from continuing to falsely advertise the Product.

With substantial resources and the ability to seek appeals of adverse decisions, Wrigley could have protracted any litigation to the point where it could have taken years for the Class to enjoy any recovery, if at all. During that time Wrigley could have continued to falsely advertise the Product, thereby expanding the universe of deceived consumers even wider.

Furthermore, the Settlement was the product of extended, arms-length negotiations between the Parties. Over the course of several months, and with the assistance of an experienced mediator during two-full day and numerous telephonic mediation sessions, the Parties engaged in settlement negotiations regarding the challenged claims at issue. As demonstrated below, the Settlement Class meets all of the requirements for final certification of a settlement class; and the Class Notice program and Media Plan has satisfied all of the requirements of Federal Rules of Civil Procedure, Rules 23(c)(2)(B) and (e), and has provided the best notice practicable under the circumstances to Settlement Class Members.

Moreover, the award of attorneys' fees agreed to by the Parties and requested by Class Counsel is well within the ranges established by case law.

Here, Class Counsel have prosecuted the Litigation on a wholly contingent basis, accruing over $1.25 million in attorneys' fees.[4] Thus, the $2 million agreed-to Fee and Expense Award requested represents a 1.6 multiplier of Class Counsel's lodestar – or 28.6% of the total $7 million Settlement Fund or 33.3% of $6 million, without taking into account the value of injunctive relief.  Both this multiplier and the percentage of the Settlement Fund are within the acceptable range of attorney's fees awards in class settlements.  Moreover, Class Counsel also incurred nearly $50,000 in uncompensated and necessary out-of-pocket litigation expenses, and the agreed-to request for reimbursement of these expenses is also reasonable.

Moreover, to date, the Settlement has received an overwhelmingly positive response from the Settlement Class.  Despite the size of the Class, there are no opt-outs, and no objectors.[5]  This positive response further compels final approval.

Class Counsel, therefore, respectfully request that this Court enter  the [Proposed] Judgment, Final Order and Decree (D.E. No. 84-5): (1) finally certifying the Settlement Class; (2) granting final approval of the Settlement, (3) granting the agreed-to Fee Award of $2,000,000 plus $49,477.58 in expenses; and (4) awarding the agreed-to $10,000 class representative incentive award to the Plaintiff.

---

[4]    Attached hereto are Class' Counsel's declarations providing detailed information concerning their respective firms requested attorneys' fees and expenses. *See* Ex. 1, (Declaration of Timothy G. Blood ("Blood Fee Declaration" or "Blood Fee Decl.")), Ex. 2, (Declaration of Jonathan M. Stein), Ex. 3, (Declaration of Paul J. Geller), and Ex. 4, (Declaration of John Patterson) (collectively, "Class Counsel's Declarations").

[5]    To date, no objections to the Settlement have been made.  The deadline to file opt-outs from, motions to intervene in, and objections to the Settlement is October 4, 2010.  If any objections are made, Plaintiff will file supplemental briefing addressing the objections.

## II.     HISTORY OF THE LITIGATION

### A.     Initial Investigations and Filings

Beginning in early April 2009, Class Counsel began investigating the potential claims related to Defendant's false and deceptive marketing and advertising.  Class Counsel conducted an extensive investigation, which included gathering commercials, other marketing materials and substantial scientific literature.  Class Counsel conducted interviews with an expert in the relevant scientific field and researched Defendant's marketing practices.

On May 1, 2009, Plaintiff initiated this litigation against Defendant in this Court.  The initial complaint in this case was the result of several weeks of drafting, consultation with a scientific expert, and analysis of Defendant's marketing and advertising, and its purported scientific substantiation behind the claims at issue.

### B.     The Parties Conducted Substantial Discovery – Producing and Reviewing Over 360,000 Pages of Documents

The Parties served and responded to significant discovery requests, including requests for production of documents, interrogatories, and requests for admissions. O'Reardon Decl., ¶¶2, 9.[6] Plaintiff sat for a full day deposition and provided responses to Wrigley's interrogatories and document requests. *Id.*, ¶9. In addition to sets of discovery served on Wrigley, Plaintiff served subpoenas for documents upon numerous third-parties involved in marketing the products for Wrigley, as well as researchers testing the product ingredients at issue. *Id.*, ¶6. Throughout the Litigation the Parties held numerous meet and confer sessions over Plaintiff's discovery requests and the scope of Wrigley's production of documents in response thereto. *Id.*, ¶3. As a result of Plaintiff's discovery requests, Wrigley produced hundreds of thousands of pages of documents

---

[6]     "O'Reardon Decl." refers to The Declaration of Thomas J. O'Reardon II in Support of Joint Request for Preliminary Approval of Class Action Settlement (D.E. No. 86-2), which was previously filed with the Court on June 4, 2010.

from its employees involved in the development, marketing, science and sale of the Product. *Id.*, ¶5. The subpoenaed parties also produced tens of thousands of pages of documents. *Id.*, ¶6. Class Counsel reviewed and analyzed all documents produced in this Litigation. *Id.*, ¶7. The Parties also engaged in discovery motion practice, including briefing regarding the entry of a protective order regarding confidential and trade secret information. *Id.*, ¶4.

To properly analyze and cull Defendant's large document production under the tight deadlines of the pretrial schedule, Class Counsel organized a team of attorneys and a marketing expert to review, code and analyze documents. Class Counsel also consulted with their marketing expert and a microbiologist regarding the substantive issues in the Litigation. As a result, Class Counsel has become intimately familiar with the strengths and weaknesses of the Litigation.

### C.    Defendant's Motion to Dismiss

On June 15, 2009, Wrigley moved to dismiss the entire Complaint. Wrigley argued that the Complaint failed to properly allege injury under the Florida Deceptive and Unfair Trade Practices Act, Fla Stat. §501.201 *et seq.*, and that the express warranty claim failed due to lack of requisite injury and privity. In a published opinion dated October 1, 2009, the Court denied Wrigley's motion to dismiss in its entirety. *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009).

### D.    Plaintiff's Motion for Class Certification

On January 22, 2010, Plaintiff filed her Motion for Class Certification. On February 19, 2010, Wrigley filed its Opposition to the Motion for Class Certification. In support thereof, Wrigley submitted a declaration from a company vice president and an independent marketing expert. Plaintiff filed her reply on March 12, 2010. Submitted with Plaintiff's reply

memorandum was the Declaration of Thomas J. Maronick, DBA, JD, a marketing expert retained by Class Counsel who analyzed Wrigley's marketing campaign and consumer research.

### E.     The Settlement Negotiations, Preliminary Approval, and Class Notice

On March 11, 2010, Class Counsel, Defendant, and Defendant's Counsel participated in a full day mediation session with Rodney A. Max, Esq. of Upchurch Watson White & Max Mediation Group. Blood Prelim. Decl., ¶3.[7]  On March 16, 2010, the Parties held a second in-person mediation session with Rodney Max.  Significant settlement negotiations continued via numerous conference calls between and among the Parties' counsel and the mediator.  *Id*.  As a result of the mediations and negotiations, the Parties signed a Memorandum of Understanding ("MOU") regarding a potential settlement on April 12, 2010.  Stipulation, §I.B.; Blood Prelim Decl., ¶¶3-4.  Over the following month, the Parties heavily negotiated every aspect of the proposed settlement and the relief and ultimately the Parties were able to reach agreement.  *Id.*, ¶4.  The terms and conditions of the Settlement are set forth in the Stipulation of Settlement, filed on June 1, 2010.  *See* D.E. Nos. 84 and attached exhibits 84-1 – 84-8.

On June 4, 2010, the Parties submitted the Stipulation and moved for preliminary approval.  On June 15, 2010, the Court preliminarily certified the following Class for the purposes of this Settlement:

> All persons who purchased in the United States the Product at any time up to the date notice is provided to the Class.  Excluded from the Class are Defendant's officers, directors and employees and those who purchased the Products for the purpose of resale.

D.E.  No. 88 at 12.  The Court also set a date for final Settlement Hearing, appointed Class Counsel to represent the Class, appointed Plaintiff as class representative for the Class, and

---

[7]     "Blood Prelim. Decl." refers to The Declaration of Timothy G. Blood in Support of Joint Request for Preliminary Approval of Class Action Settlement (D.E. No. 86-1), which was previously filed with the Court on June 4, 2010.

directed the Court-appointed Class Action Settlement Administrator to publish the Class Notice and administer Settlement claims.  Pursuant to the Court's June 15, 2010, Order, Class Notice was distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 11 million and a readership of more than 81 million) specifically chosen to reach Class members.  Blood Fee Decl., ¶5.  To further enhance the notice effort, the Settlement was widely publicized using Internet banner ads for several weeks on highly trafficked Internet sites including: Facebook.com, Weather.com, CNN.com, Univision.com, AOL.com, and Yahoo.com, press releases, audio news releases, via a Settlement Website (www.EclipseSettlement.com), and through a toll-free number.  *Id.*  As of September 27, 2010, the Class Action Settlement Administrator has  not received any opt-outs from the Settlement Class.

## III.  THE SETTLEMENT TERMS

### A.  Settlement Relief

The Settlement includes cash payments and non-monetary relief, summarized as follows:

#### 1.  Cash Payments

The Settlement provides for cash payments to Settlement Class Members who submit claims.  Under the Settlement, Defendant has created a Settlement Fund of up to $7 million.  A Settlement Class member is entitled to obtain up to $10.00 in cash reimbursement of the amount of money he or she paid for the Product.  Settlement Class Members may recover up to $5.00 merely by timely submitting a valid Claim Form either by mail or electronically.  Settlement Class Members may recover up to $10.00 by submitting a valid Claim Form and signing the following affirmation:  "I affirm that I purchased the listed Wrigley Eclipse gum or mints packaging with a "NATURAL GERM KILLING" message in the United States."  Under the Claims Administration Protocols (Stipulation, Ex. B), the Class Action Settlement Administrator has broad discretion in determining what constitutes a valid claim.  In addition to cash payments

to Settlement Class Members, the Settlement Fund will be applied to pay:  Class Notice costs and claims administration expenses; necessary taxes related to interest earned by the fund; Plaintiffs' Counsel's attorneys' fees and expenses with interest, and a class representative incentive award.

If the total amount of eligible claims plus the other costs exceeds $6 million, Wrigley will pay dollar for dollar additional amounts to pay claims, up to $1 million, for a total fund of $7 million.  In the unlikely event claims plus the other costs exceed $7 million, each claim will be proportionately reduced.

Conversely, if the total amount of payments made by Defendant is less than $6 million, then Defendant will pay the remaining amount of the Net Settlement Fund to one or more charities pursuant to the *cy pres* doctrine.  Those charities will be jointly chosen by the parties and must be approved by the Court.

Because of the relatively low dollar amount of the Product, and the correspondingly low refunds, the parties anticipate the *cy pres* aspect of the settlement will be significant.  To that end, in the Class Notice and on the Claim Form, Class members are reminded that by not submitting a claim, more will be available for charitable donation.

### 2.     Injunctive Relief

Under the Settlement, by December 31, 2010 or within 90 days of the Effective Date of the Settlement, whichever comes later, and for a period of three (3) years from the Effective Date, Wrigley shall refrain from using in its advertising, and manufacturing further Product labeled with, the "germ kill" messages challenged in the complaint filed in the Litigation. In addition, Wrigley, which in the time frame specified in this Paragraph will cease to include the Magnolia Bark Extract ("MBE") ingredient in the Product, will discontinue use of all "germ kill" messages in the Product advertising and labeling.

## IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

"Regardless of whether a class is certified for settlement or for trial, the Court must find the[] prerequisites [for class certification under Rule 23(a)] are met:  [namely, whether] "(1) the class is so numerous that joinder of all members is impracticable ['numerosity'], (2) there are questions of law or fact common to the class ['commonality'], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ['typicality'], and (4) the representative parties will fairly and adequately protect the interests of the class ['adequacy of representation']."  *Lipuma v. Am Express Co.,* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citing Fed. R. Civ. P. 23(a)).  "The proposed class must also meet the requirements of one of the three class types found in Rule 23(b)." *Id.* at 1314; *accord Amchem Products v. Windsor*, 521 U.S. 591, 614 (1997); *Ass'n for Disabled Ams. Inc. v. Amoco Oil Co.,* 211 F.R.D. 457 (S.D. Fla. 2002).   In addition, the Court must find that the class action settlement is "fair, adequate and reasonable" and not the product of collusion. *Id.* at 466 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)); *accord Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534 (S.D. Fla. 1988).

As set forth in great detail in Plaintiff's Memorandum in Support of Joint Request for Preliminary Approval of Class Action Settlement (D.E. No. 85), which was previously filed with the Court on June 4, 2010 and is incorporated fully herein, it is clear that the Settlement Class easily meets the requirements of Rule 23(a) and should be certified for settlement purposes.

## V.     THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

As demonstrated below, the Settlement fully satisfies the factors for determining the propriety of a class action settlement under Rule 23.

### A.     The Standard for Final Approval of a Class Settlement

To approve a class action settlement, the Court must find it to be "fair, adequate, and reasonable." *Access Now, Inc. v. Claire's Stores, Inc*., 2001 U.S. Dist. LEXIS 21481 (S.D. Fla. 2001); *Bennett*, 737 F.2d at 986.  In making this overall determination, the Court must consider the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement."  *Leverso v. Southtrust Bank Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see Bennett*, 737 F.2d at 986.  Courts have emphasized that the above factors should not be applied in a formalistic fashion.  *See, e.g., Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992).  Too, "[i]n evaluating these considerations, the Court must not try the case on the merits." *Amoco*, 3211 F.R.D. at 467.  "Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.*

Also, "[i]n evaluating a settlement's fairness, 'it should not be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'"  *Amoco,* 211 F.R.D. at 468 (citing *Cotton*, 559 F.2d at 1330).  "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.*

As demonstrated below, this Settlement fully meets this standard for final approval and, further, should be approved by this Court.

**B.    The Settlement Is Free From Fraud and Collusion and Is the Product of Arms-Length Negotiations**

The requirement that a settlement be fair is designed to protect against collusion among the parties.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg*, §11.41; *see also In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, the Parties did not begin substantive discussions until after many months of hard-fought litigation, including briefing and this Court's ruling on Wrigley's motion to dismiss, briefing Plaintiff's motion for class certification, and the Parties' extensive discovery efforts. Blood Prelim. Decl., ¶3.  During this time period, Wrigley produced hundreds of thousands of documents responsive to Plaintiff's discovery requests.  O'Reardon Decl., ¶5.  Wrigley also provided Plaintiff with responses to interrogatories and requests for admission.  *Id*.  In addition, Class Counsel reviewed and analyzed thousands of pages of documents produced by third-parties subpoenaed in this Litigation. *Id.*, ¶6.  Prior to executing the MOU, Plaintiff also retained and worked closely with her expert consultants to examine and analyze Wrigley's internal documents, including its consumer research and purported scientific substantiation for the claims at issue.  Blood Prelim. Decl., ¶3.  Through this information, Plaintiff was able to assess the strengths and weaknesses of her case, including the value of the potential damage claims.

With the seminal issue of class certification pending, the Parties engaged the services of mediator Rodney A. Max, Esq., of Upchurch Watson White & Max Mediation Group, an experienced and skilled mediator, who, after numerous in-person mediation sessions and conference calls assisted the Parties to the point of memorializing a Memorandum of

Understanding on April 2, 2010.  Blood Prelim. Decl., ¶¶3-4.  By this time, Class Counsel, who are experienced in prosecuting complex class action claims such as these, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996); Blood Prelim. Decl., Exs. 1-3 (Resumes of Blood Hurst & O'Reardon, LLP, Robbins Geller Rudman & Dowd LLP, and John Patterson).  The initial full-day mediation session with the mediator was followed by a second full-day session and weeks of detailed and contentious negotiations between the Parties before agreement on the Settlement was reached.  Blood Prelim. Decl., ¶3.  The fact that the Parties received assistance from an experienced mediator is one factor that demonstrates the Settlement was anything but collusive.  *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").  Further, the nature of the subsequent negotiations between the Parties, the experience of Class Counsel as longstanding class action attorneys, and the fair result reached are illustrative of the arm's-length negotiations that led to the Stipulation of Settlement.

C. **The Likelihood of Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement, and the Risks, Expense, and Delay of Further Litigation All Support Approval of This Settlement**

Although Class Counsel are confident about the merits of the case, there are substantial hurdles in prosecuting this case to trial against Wrigley.  Wrigley, a multi-billion dollar corporation, possesses considerable financial resources, has a teams of scientists, and has retained not one, but two, prominent and large defense firms to prosecute its defense.

The Litigation presents a classic "battle of the experts" over the sufficiency of the scientific substantiation for the subject claims.  On the side of Defendant are scientists from prominent universities with impressive resumes who are willing to engage in junk science that facially appears valid, in return for handsome payments from corporations like Defendant. Defendant paid millions of dollars to generate outcome determinative studies from these experts. Juries are particularly susceptible to undue influence by people with such impressive credentials. This weighs in favor of approving this settlement.  *See*, *e.g.*, *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("The issue would undoubtedly devolve into a battle of experts whose outcome cannot be accurately ascertained in advance.").

The class certification opinion in *Wiener* details some of the risks that Plaintiff faced in prosecuting the Litigation to trial.  Indeed, although the court found that plaintiff satisfied the class certification predominance and superiority requirements, a California statewide class was not certified.  Furthermore, Judge Otero's opinion expressly recognized that Defendant may introduce evidence to rebut the inference of class member reliance on the challenged advertising. *See Wiener*, 255 F.R.D. at 671.  Somewhat ominously, the opinion also cites the Ninth Circuit's opinion in *Dukes v. Wal-Mart*, 509 F. 3d 1168, 1176 (9th Cir. 2007) for the proposition that the district court may later modify or decertify the class.  *Wiener*, 255 F.R.D. at 671.

- 13 -

On the other hand, with this timely Settlement, there is certain and current relief for the Settlement Class, as opposed to protracted and uncertain litigation.  Moreover, because Class Counsel largely have achieved the compensatory and injunctive relief that they set out to achieve, the prospect of recovering more for the Class after protracted litigation does not outweigh the benefits to that the Class achieved by entering into the Settlement now.  "By settling this action, the parties have shortened what would have been a very hard-fought and exhausting period of time, which may have realistically ended with a decision similar to the terms of this settlement" or potentially denied any relief and achieved no benefit for Settlement Class Members.  *See Behrens*, 118 F.R.D. at 543.

Accordingly, this factor strongly favors final approval.

**D.    The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of Their Proofs Supports Approval of This Settlement**

Class Counsel are well-informed and experienced class action attorneys, and endorse this Settlement.  This compels a finding that the Settlement should be approved.  *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement"); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").  After reviewing and analyzing over 360,000 pages of Defendant's documents and having retained consultants that are

experienced in the relevant subject areas, Class Counsel is well apprised of the strength of its claims.  Indeed, as reflected by the firm resumes attached to their concurrently submitted declarations, Class Counsel are comprised of highly experienced and successful plaintiff class action attorneys.  Several members of Class Counsel also specialize in consumer protection class actions.  The collective judgment of Class Counsel, and only after the lengthy and arduous litigation process, was that this Settlement is in the best interests of the Class.  This judgment should be given substantial deference by this Court as Class Counsel are zealous consumer advocates, understand the fiduciary duties involved in class representation, and have histories of achieving success and results on behalf of plaintiff classes that speak for themselves.

### E.    The Amount of Discovery Completed and the Character of the Evidence Uncovered Supports Approval of This Settlement

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating."  *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995).  Throughout this litigation, Class Counsel have conducted substantial discovery.  *Lonardo v. Travelers Indem. Co.*, No. 1:06-CV-962, 2010 WL 1416698, at *37-38 (N.D. Ohio Mar. 31, 2010) ("[A]nother factor the Court considers in evaluating the Settlement Agreement is the amount and character of the evidence assembled to date.").  As detailed in the O'Reardon Declaration, the Parties have engaged in significant discovery, providing Class Counsel with the ability to make a fully informed decision on how to optimally negotiate the Settlement.  Class Counsel propounded several sets of discovery requests on Defendant to which it responded by producing over 360,000 pages of documents from its employees involved in all aspects of the Product, from the regulatory department, to marketing and advertising, and scientific development and substantiation.  In addition, Class Counsel

served many subpoenas on third-parties involved in the marketing and science behind the Product. Third-parties produced tens of thousands of documents in connection with the Litigation. Plaintiffs' Counsel reviewed analyzed and culled all produced documents, coding them into a fully searchable and indexed electronic document database and selecting the key documents for depositions and trials.

Thus, this factor also strongly favors approval of the Settlement.

### F.      Whether the Settlement Is Fair to the Unnamed Class Members

The Settlement is fair to the unnamed Class members. The Settlement provides up to $10 in compensation to Settlement Class Members for their purchases for the Product. Because the Product is purchased at grocery stores, the Parties do not have names, addresses and purchase information that would enable checks to be sent directly to Claimants. Therefore, Claim Forms had to be submitted. However, the claim process here is exceedingly simple and can be done completely online at the Settlement Website with a few clicks. To obtain $5, a Settlement Class Member need only submit a Claim Form, which can be done online or by mail. To receive $10, the Settlement Class Member need only submit the Claim Form and attest that the information submitted is correct.

Thus, the Settlement utilized a very simple claim process that provided real monetary benefits to Settlement Class Members.

### G.      Opt-Outs and Objections Raised by Class Members

The Court should also look at the reaction of Class members. As of the date of this submission, there are no opt-out requests – a remarkably small number given the size of the Settlement Class.

There are also no objections. "The lack of significant objections is powerful evidence of the fairness of a proposed settlement." *In re Nationwide Fin. Servs. Litig.*, No. 08-00249, 2009

U.S. Dist. LEXIS 126962, at *20 (S.D. Ohio Aug. 18, 2009). "[A] relatively small number of class members who object is an indication of a settlement's fairness." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio. 2001). Furthermore, "[i]n considering the extent and significance of the objections, 'the Court must view the agreement in its entirety, rather than isolating individual components of the agreement for analysis.'" *Robinson v. Ford Motor Co.*, No. 04-00844, 2005 U.S. Dist. LEXIS 11673, at *16-*17 (S.D. Ohio June 15, 2005).

The overwhelming approval by Class members to date favors final approval.

## VI. CLASS COUNSELS' UNOPPOSED REQUEST FOR FEES AND REIMBURSEMENT OF LITIGATION EXPENSES SHOULD BE APPROVED

An award representing 28.6% of the $7 million Settlement Fund and 33.3% of the $6 million, without taking into account the value of the injunctive relief, is within the parameters favored by courts in this Circuit. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-96 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award even higher based on the circumstances of the case).

### A. Courts Give Substantial Deference to the Agreement Between the Parties About Fees in Class Action Settlements

Through skillful and focused litigation, Plaintiffs' Counsel have achieved a Settlement that provides up to $7 million in class-wide relief – without including the value of the injunctive relief. After the material aspects of the Settlement were negotiated, the Parties then negotiated the fee award. Further, the agreed-to fee includes compensation for all *future* services to be rendered by Class Counsel.

The fee negotiations were conducted at arms-length, and only after all material terms of the Settlement had been agreed upon. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,

720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Under these circumstances, the Court should give "great weight" to the negotiated character of the fee in considering the fee request. *Elkins v. Equitable of Iowa*, No. 96-296-CIV-T-17B, 1998 U.S. Dist. LEXIS 1557, at *99 (M.D. Fla. Jan 28, 1998).

As shown in greater detail below, Class Counsel's request is in any event reasonable and should be approved by the Court because:

- the Settlement makes a large sum of cash available to Settlement Class Members;

- Class Counsel undertook the litigation on a completely contingent basis, advancing all expenses and accepting all risk that they may work for years and receive no compensation or reimbursement whatsoever;

- Plaintiffs' Counsel's fee and expense request here is well within the range of acceptable percentages (only 28.6% of $7M or 33.3% of $6M);

- substantial work remains to be done in the monitoring and implementation of the Settlement; and

- similar fees have been awarded by courts nationwide based on similar or larger percentages of the value provided here.

Given these considerations, it should not be surprising that despite nationwide dissemination of the Class notice, targeted to those that purchase the Product, as of the date of this filing, no objections to the fee and expense request have been lodged, a clear indication of the overwhelming sense by Class Members that the requested fee and expense payment is appropriate, reasonable, and fair. The Settlement Class is correct: it was only through the efforts of Class Counsel – taken at their own risk – that up to $7 million in benefits in cash was made available to the Class. *Cf. In re Rio Hair Naturalizer Products Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Absent Petitioners' efforts, there would be no fund whatsoever for distribution to the class members.").

**B.    Courts Have Regularly Approved Negotiated Fee Arrangements as Part of Class Action Settlements**

Fee agreements between plaintiffs and defendants in class actions are encouraged, particularly where, as here, the attorneys' fees are negotiated separately from and after all terms of the settlement on behalf of the class have been agreed to by the parties.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Johnson*, 488 F.2d at 720 ("[i]n cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees").

In *Hensley*, the Supreme Court held that negotiated, agreed-upon attorneys' fee provisions are the "ideal" toward which the parties should strive: "A request for attorney's fees should not result in a second major litigation.  *Hensley*, 461U.S. at 437.  Ideally, of course, litigants will settle the amount of a fee."  *Id.*; *accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fee); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("The authorities encourage parties situated as those herein to agree as to the amount of counsel fees to be paid.  Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

The Parties followed the recommended procedure here:  Class Counsel and Defendant's counsel separated the issues of settlement and fees, negotiating all substantive terms of the Settlement first and deferring discussion of attorneys' fees and expenses until after all substantive terms were in place.  The fee was negotiated under market conditions: Class Counsel wished to maximize their fees to compensate for their risk, contingency, innovation and

creativity; Defendant's counsel had a direct interest in negotiating the lowest amount their clients would be required to pay.

**C.    Plaintiffs' Counsel Are Entitled to Be Compensated for Creating a Common Benefit for the Class**

Attorneys who create a common fund or benefit for a group of persons are entitled to their fees and costs based on the common benefit achieved.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).

Acknowledging the importance of awarding commensurate fees in common fund cases, Professor Conte has written:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation.  These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that fail[ed] to give the ***results obtained*** factor primary consideration.

1 Newberg on Class Actions, §1.09 (2d ed. 1993) (footnote omitted).

As the Court further explained in *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993):

> The prevailing rule in the United States is that all parties are to bear their own costs in litigation.  One of the recognized exceptions to the no-fee rule is the 'common fund' case.   Under this exception, class counsel are entitled to compensation for their services where a common fund is created by their efforts. This exception 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'   Furthermore, courts have also recognized that in order to encourage 'private attorney general' class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid.

> '[T]he financial incentive that class actions offer to the legal
> profession is a natural outgrowth of the increasing reliance on the
> "private attorney general for the vindication of legal rights;
> obviously this development has been facilitated by Rule 23....
> Where it is not economically feasible to obtain relief within the
> traditional framework of a multiplicity of small individual suits for
> damages, persons may be without any effective redress unless they
> employ the class action device.'

*Id.* at 348-49 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980)).

Moreover, adequate compensation promotes the availability of counsel for plaintiffs:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and
> effort when it is successful, then effective representation for plaintiffs in these
> cases will disappear . . . We as members of the judiciary must be ever watchful to
> avoid being isolated from the experience of those who are actively engaged in the
> practice of law.  It is difficult to evaluate the effort it takes to successfully and
> ethically prosecute a large plaintiffs' class action suit.  It is an experience in
> which few of us have participated.  The dimensions of the undertaking are
> awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985) (awarding

requested 35% fee).

Until this Litigation was initiated, Wrigley did not intend either to compensate the

defrauded consumers or to cease its advertising.  It was only through the efforts of Class Counsel

that the cash payments and injunctive relief were obtained for the Class.

**1.      Under the Common Benefit Doctrine, the Appropriate Method
of Calculating Attorneys' Fees Is as a Percentage of the Overall
Class Benefit**

The proper manner to calculate attorneys' fees is to identify the fund created for the

benefit of the class and to award counsel for the class a reasonable percentage of that fund as an

attorneys' fee.  "[I]n this circuit, attorneys' fees awarded from a common fund shall be based

upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*

*Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also In re Sunbeam Sec. Litig.*,

176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).  After carefully weighing the pros and cons of the

percentage method and the lodestar/multiplier method, the Eleventh Circuit concluded:

> After reviewing *Blum*, the [Third Circuit] Task Force Report, and the foregoing
> cases from other circuits, we believe that the percentage of the fund approach is
> the better reasoned in a common fund case.  Henceforth in this circuit, attorneys'
> fees awarded from a common fund shall be based upon a reasonable percentage of
> the fund established for the benefit of the class.

*Camden I*, at 774.  Since the Eleventh Circuit has expressly rejected the lodestar/multiplier

approach in favor of the percentage of the fund method, the primary question before this Court is

the appropriate percentage of the settlement fund to be awarded as attorneys' fees.

## 2.  The Requested Fees Are Reasonable and Warranted

The Eleventh Circuit has observed that "[t]here is no hard fast rule mandating a certain

percentage of a common fund which may reasonably be awarded as a fee because the amount of

any fee must be determined upon the facts of each case."  *Camden I*, 946 F.2d at 774.  However,

the Eleventh Circuit stated that "district courts are beginning to view the median of this 20% to

30% range, *i.e.*, 25%, as a 'bench mark' percentage fee award which may be adjusted in

accordance with the individual circumstances of each case."  *Id.* at 775.  Further, the *Camden I*

court indicated that the factors set forth in *Johnson*, 488 F.2d at 717-19,[8] as well as the time

required to reach a settlement, whether there were substantial objections from class members,

non-monetary benefits of the settlement, and the economics involved in prosecuting a class

---

[8]     The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of
the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of
other employment by the attorney due to acceptance of the case; (5) the customary fee; (6)
whether the fee is fixed or contingent; (7) time limitations imposed by the client or
circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,
and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717.

action, are among the factors that may be relevant to a Court's determination of an appropriate percentage fee. *Camden I*, 946 F.2d at 775.

Here, Class Counsel's request for fees in the amount of $2,000,000.00 is approximately 28.6% of the $7 million Settlement Fund, or 33.3% of the $6 million. As discussed below, this percentage is well within the range historically awarded in class actions in this Circuit and elsewhere. Moreover, this percentage does not take account of the amount of work going forward for which there will be ***no*** additional compensation.

### a.    The Value of the Benefit Obtained

Courts have consistently recognized that the result achieved for the benefit of the class on whose behalf the action was brought is one of the most important factors to be considered in making a fee and expense award. *See*, *e.g.*, *Hensley*, 461 U.S. at 436. Plaintiffs' Counsel's success in obtaining benefits for the Class – with a tangible value of up to $7 million – must be considered nothing less than an unqualified success. This Settlement allows all Claimants to receive full relief. Further, the injunctive relief brings a halt to the practices alleged.

### b.    The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risk of failure and nonpayment in a class action are extremely high. Class Counsel have received no compensation during the course of this litigation and have also incurred unreimbursed expenses in litigating on behalf of the Class, none of which would have been recovered if the case was not successfully concluded. From the time Class Counsel filed suit, there existed a significant possibility that they would achieve no recovery for the Class and, hence, no compensation. Class Counsel's investment of time and expenses has always been at

risk and wholly contingent on the result they achieved.   Although Class Counsel have successfully resolved the litigation, this result was not foreseeable at the outset.   The contingency risk in this case was substantial and militates in favor of an award of the requested fee.[9]

Numerous cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award.   *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000); *accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *cert. dismissed sub nom.*, *Ledbetter v. Jones*, 453 U.S. 950 (1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result"); *see also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award"); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Ala. State Bd. of Ed.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

In *Behrens*, 118 F.R.D. at 548, the court noted that:

Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . .

A contingency fee arrangement often justifies an increase in the award of attorneys' fees.   This rule helps assure that the contingency fee arrangement endures.   If this 'bonus' methodology did not exist, very few lawyers could take

---

[9]       Courts have also made clear that if, by reason of their professional skill and determined efforts, plaintiff's counsel are ultimately able to secure a settlement, that fact is not relevant to an assessment of the degree of risk that they assumed at the time of filing the litigation. *See Harman v. Lyphomed, Inc.,* 945 F.2d 969, 976 (7th Cir. 1991) (contingent multiplier "is designed to reflect the riskiness of the case at the outset"); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them"); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976). The relevant risks must be evaluated from the standpoint of plaintiff's counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight.

on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 548; *see also Sunbeam*, 176 F. Supp. 2d at 1335.   As Judge Nimmons, Jr. explained in

*Ressler*:

> The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever.  Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award .  . . .  In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel received little or no fee.

149 F.R.D. at 656-57.[10]

Success at trial in complex litigation is highly unpredictable.  As one court observed in the context of a class action litigation: "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

The risk of succeeding at trial on liability issues is significant enough.  However, the history of class action litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal.  *See*, *e.g.*, *U.S. Football League v. NFL*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award

---

[10]    The Fourth Circuit made a similar observation in *McKittrick v. Gardner*, 378 F.2d 872 (4th Cir. 1967):

> The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed credibly when payment of any fee is so uncertain.

*Id.* at 875.

plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Commc'n Corp. v. AT&T*, 708 F.2d 1081, 1166-67 (7th Cir. 1983) (judgment was remanded for new trial and damages).  The seminal class action case of *Eisen*, 417 U.S. at 156, illustrates the risks faced by class counsel.  *Eisen* was brought as an antitrust class action.  After two trips to the Second Circuit and one to the Supreme Court, plaintiffs and the putative class and their counsel recovered nothing.

Class Counsel have received no compensation for their efforts during the course of this litigation, have incurred significant expenses in litigating for the benefit of Class members and have expended many hours of attorney and paralegal time in obtaining this result for the Class.  Any fee award or expense reimbursement has always been at risk and completely contingent on the result achieved.  The financial risks borne by Class counsel fully support the appropriateness of the fee requested.

### c.      The Public Interest

Every state in the country has laws against false adverting.  The FTC was created to combat false advertising.  False advertising in food products is also governed by the Food & Drug Administration.  All of this demonstrates that this type of case is in the public interest.  The benefit to society rendered by Class Counsel in consumer protection class actions such as this are undeniable, and an award of attorneys' fees should reflect this service:

> Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized.  As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 161 (1974).  Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.

*Rio Hair*, 1996 WL 780512, at *17.

### d.      The Complexity of the Litigation

This Litigation presented a complex marketing and advertising campaign developed by an extremely sophisticated company.  The subject matter of the science is very complex and largely not yet known.  Wrigley has spent a significant amount of financial resources in research to substantiate its advertising claims.  Class Counsel spent countless hours researching the issues, and retained experts in order to help explain the intricacies of the case.  Further, to successfully certify a nationwide class in the litigation context it would involve extremely involved choice-of-law determinations.  Thus, the Litigation is fairly categorized as complex.

### e.      The Professional Skill and Standing of Respective Counsel

As noted above, Class Counsel consists of highly experienced class action counsel with nationwide practices specializing in consumer fraud law and similar areas.  *See* Exhibits to Class Counsel's Declaration, (Resumes of Blood Hurst & O'Reardon, LLP, Law Office of Jonathan M. Stein, P.L.,  Robbins Geller Rudman & Dowd LLP, and John Patterson).

In the other corner, Wrigley was represented by two top law firms.  Obviously, defense counsel presented formidable opposition to Class Counsel.  Class Counsel rightly anticipated a superior caliber of legal work performed by counsel for Wrigley.  Yet, despite this formidable opposition, Class Counsel were able to achieve an extremely beneficial result for the Class.

### f.      The Requested Fees Reflect the Market Rate in Other Complex, Contingent Litigation

The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients.  Individual clients often recognize that they lack the expertise or time to monitor their attorneys' performance.  Thus, they select a compensation

formula – the contingent fee – that automatically aligns their attorneys' interest with their own.

Courts are encouraged to look to the private marketplace in setting a percentage fee:

> The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the 'clients' (the class members) of $45 million.  The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.  Suppose a large investor had sued Continental for securities fraud and won $45 million.  What would its lawyers have gotten pursuant to their contingent fee contract?

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).  This view was reiterated by the

district court in *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702

(S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

*Id.* at *20.

In private litigation, attorneys regularly contract for contingent fees between 30% and

40% directly with their clients.  *See Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39,

1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class

action damage lawsuits use the simple method of paying the attorney a percentage of what is

recovered for the client.  The more the recovery, the more the fee.  The percentages agreed on

vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir.

1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval,

contract providing for one-third contingent fee if litigation settled prior to trial).  These

percentages are the prevailing market rates throughout the United States for contingent

representation.

In making a determination of what constitutes a fair percentage fee, this Court should be guided by other such awards.  As the Eleventh Circuit stated in *Camden I*: "[t]he majority of common fund fee awards fall between 20% to 30% of the fund."  *Id*. at 774 (citing 1 Herbert B. Newberg, *Attorney Fee Awards* 2.08, at 51 (1986)).  The court went on to note that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."  *Camden I*, 946 F.2d at 774-75.   In *Ressler*, 149 F.R.D. at 655, the court reviewed fee awards in similar cases citing, among other cases, *Zinman v. Avemco Corp.*, No. 75-1254, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978) (fee equal to 50% of recovery); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (fee equal to 40% of recovery); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981) (fee equal to 36.2%); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) (fee equal to 34%); *Bello v. Integrated Res., Inc.*, No. 88 Civ. 1214 (CSH), 1990 U.S. Dist. LEXIS 16240, at *7 (S.D.N.Y. Nov. 30, 1990) (holding that the common range of fees is 20-50 percent).  Many recent decisions in this Circuit have awarded attorneys' fees in an amount equal to or in excess of the percentage sought here, further confirming the fairness and reasonableness of the requested fee.[11]

---

[11]     *See*, *e.g.*, *Waters*, 190 F.3d at 1291 (awarding 33 1/3%); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1323 (awarding 25%); *Diaz v. Hillsborough County Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000) (awarding 30%); *see also Tapken v. Brown*, Case No. 90-691-CIV-MARCUS (S.D. Fla. 1995) (awarding 33%); *In re Int'l Recovery Corp. Sec. Litig.*, Case No. 92-1474-CIV-ATKINS (S.D. Fla. 1994) (fee award represented 30% of class benefit); *In re Sound Advice, Inc. Sec. Litig.*, Case No. 92-6457-CIV-UNGARO-BENAGES (S.D. Fla. 1994) (awarding 30%); *In re Belmac Corp. Sec. Litig.*, Case No. 92-1814-CIV-T-23-(C), 1994 U.S. Dist. LEXIS 21584 (M.D. Fla. Apr. 6, 1994) (awarding 31%); *Holloway v. Chapnick*, Consol. Case No. 89-6572-CIV-PAINE (S.D. Fla. 1994) (awarding 30%); *In re Perfumania, Inc. Sec. Litig.*, Case No. 92-1490-CIV-MARCUS (S.D. Fla. 1993); (awarding 30%);  *In re Royce Lab., Inc. Sec. Litig.*, Case No. 92-0923-CIV-MOORE (S.D. Fla. 1993) (awarding 30%); *Kaser v. Swann*, Case No. 90-607-CIV-Orl-3A18 (M.D. Fla. 1993)

In addition, National Economic Research Associates, an economics consulting firm, conducted surveys in 1995 and 1996 of fee awards in class actions.  Using data from 433 class actions, the study reports the following: "[r]egardless of case size, fees average approximately 32 percent of the settlement."  Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) (hereinafter "*Recent Trends IV*").  Another study released in 1996 focused on class actions in four federal district courts: the Southern District of Florida, the Northern District of California, the Eastern District of Pennsylvania, and the Northern District of Illinois.  The Federal Judicial Center Study reported findings very similar to the NERA study: "Median rates ranged from 27% to 30%.  Most fee awards in the study were between 20% and 40% of the gross monetary settlement."  Thomas E. Willging, Laural L. Hooper, and Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* at 69 (Federal Judicial Center 1996).

This finding is consistent with recent fee awards in class action cases throughout the country:

- *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (30% of net settlement of $111 million)

- *In re Aetna Inc. Sec. Litig.*, Civil Action MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) (30% fee awarded on $83 million settlement)

- *In re Prudential Sec. Ltd. P'ship Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996) (27% fee awarded on $110 million settlement)

- *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (27% fee awarded on $116 million settlement)

---

(awarding 30%); *In re Home Shopping Network Sec. Litig.*, Case No. 87-428-T-13(A) (M.D. Fla. 1991) (awarding 33%).

- *In re Prison Realty Sec. Litig.*, Civil Action No. 3:99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) (30% fee awarded in $104 million settlement)

- *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement)

- *Di Giacomo v. Plains All Am. Pipeline*, Civil Action No. H-99-4137 (Consolidated), 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (30% fee awarded on $24.1 million settlement)

- *In re InaCom Corp. Sec. Litig.*, Master File No. 00-701 (D. Del. Jan 14, 2003) (33-1/3% fee awarded)

- *In re APAC Teleservices Inc. Sec. Litig.*, No. 97-CIV-9145(BJS) (S.D.N.Y. Dec. 11, 2001) (33-1/3% fee awarded)

- *In re Drkoop.com.*, No. 00-CA-427-JRN (W.D. Tex. Nov. 14, 2001) (33-1/3% fee awarded)

- *In re Schein Pharm., Inc. Sec. Litig.*, Master Docket No. 98-4311 (JCL) (D.N.J. Dec. 7, 2000) (33-1/3% fee awarded)

- *In re Future Healthcare Sec. Litig.*, Master File No. C-1-95-180 (S.D. Ohio Nov. 28, 2000) (33-1/3% fee awarded)

- *In re U.S. Interactive, Inc. Sec. Litig.*, Case No. 01-CV-522 (E.D. Pa. Oct. 20, 2003) (fee equal to 33% of total recovery, plus expenses)

- *In re Lifescan, Inc. Consumer Litig.*, Case No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) (fee equal to 33% of total recovery, plus expenses)

- *In re FirstPlus Fin. Group, Inc.*, Master File No. 3:98-CV-2551-M (N.D. Tex. Oct. 14, 2003) (fee equal to 30% of recovery, plus expenses)

- *Harris v. Intel Corp.*, No. C-00-1528-CW(EMC) (N.D. Cal. July 15, 2003) (fee equal to 30% of recovery, plus expenses)

- *Warstadt v. Hastings Entm't, Inc.*, Civil Action No. 2:00-CV-089-J (N.D. Tex. Mar. 10, 2003) (fee equal to 30% of recovery, plus expenses)

- *Silver v. UICI*, No. 3:99CV2860-L (N.D. Tex. Mar. 3, 2003) (fee equal to 30% of recovery, plus expenses)

- *Berger v. Compaq Computer Corp.*, No. 98-1148 (N.D. Tex. Nov. 22, 2002) (fee equal to 30% of recovery, plus expenses)

- *Thurber v. Mattel, Inc.*, No. CV-99-10368-MRP(CWx) (C.D. Cal. Oct. 1, 2003) (fee equal to 27% of recovery, plus expenses)

**D.      Class Counsels' Litigation Expenses Should Be Reimbursed**

Class Counsel should be reimbursed for their expenses in litigating this case in the amount of $49,477.58.   *Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered) (quoted in *Texas State Teachers Ass'n v. San Antonio Indep. Sch. Dist.*, 584 F. Supp. 61, 66 (W.D. Tex. 1983)); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1255 (3d Cir. 1995) (expenses are recoverable if it is customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.").   Defendant agreed to not oppose an award of actual out-of-pocket expenses not to exceed $75,000.  D.E. 84 at §VIII.A. (Stipulation).  Class Counsel's out-of-pocket expenses incurred in this Litigation were reasonable and necessary, and should be reimbursed pursuant to the Settlement.  *See* Exs. A-D (Class Counsel's Declarations).

**VII.    REPRESENTATIVE PLAINTIFF IS ENTITLED TO AN INCENTIVE AWARD**

Class Counsel request approval of a modest incentive award in the amount of $10,000 to the class representative involved in the Litigation to be paid out of the Settlement Fund. Defendant does not oppose this award.

"'Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation.'" *Camp v. Progressive Corp.*, No. Civ.A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004); *see also Carrabba v. Randalls Food Mkts., Inc.*, 191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) (recognizing practice of awarding incentive awards). Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation. *See*, *e.g.*, *Camp*, 2004 WL 2149079, at *7 (awarding up to $10,000 to each named plaintiff as incentive awards, for a total payment of $102,000); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999), *reversed on other grounds*, 570 F.3d 244 (5th Cir. 2009) (awarding named plaintiffs up to $10,000 each for participating in lawsuit); *In re Granada P'ship Sec. Litig.*, 803 F. Supp. 1236, 1247 (S.D. Tex. 1992) (granting request for incentive award of $5,000 to representative class action plaintiffs); *Purdie v. Ace Cash Express, Inc.*, No. Civ.A. 301CV1754, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (awarding the three named plaintiffs a combined incentive award of $16,665); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (awarding each of four named plaintiffs a $10,000 incentive award).

The incentive award requested is justified in light of the willingness of the named plaintiffs to devote their time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred to Wrigley's customers, and should be approved.

## VIII.   CONCLUSION

WHEREFORE, for the foregoing reasons, Class Counsel move this Court to enter the [Proposed] Judgment, Final Order and Decree (D.E. No. 84-5): (1) finally certifying the Settlement Class; (2) granting final approval of the Settlement, (3) granting the agreed-to Fee

Award of $2,000,000 plus expenses of $49,477.58; and (4) awarding the agreed-to $10,000 class

representative incentive award to the Plaintiff.


DATED:  September 27, 2010              LAW OFFICE OF JONATHAN M. STEIN, P.L.
                                        JONATHAN M. STEIN
                                        Florida Bar No. 009784



                              *s/Jonathan M. Stein*
                   _____
                              JONATHAN M. STEIN

120 East Palmetto Park Road, Suite 420
Boca Raton, FL 33432
Telephone: 561/961-2244
561/750-5964 (fax)
jstein@jonathansteinlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CULLIN A. O'BRIEN
Florida Bar No. 0597341
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
cobrian@rgrdlaw.com

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BALKAN & PATTERSON, LLP
ADAM BALKAN
Florida Bar No. 0044880
JOHN PATTERSON
Florida Bar No. 023930
601 S. Federal Highway, Suite 302
Boca Raton, FL  33432
Telephone:  561/750-9191
561/750-1574 (fax)
adam@balkanpatterson.com
john@balkanpatterson.com

Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 27, 2010.


s/ Jonathan M. Stein
JONATHAN M. STEIN

LAW OFFICE OF JONATHAN M. STEIN, P.L.
JONATHAN M. STEIN
Florida Bar No. 009784
120 East Palmetto Park Road, Suite 420
Boca Raton, FL 33432
Telephone: 561/961-2244

E-mail:  jstein@jonathansteinlaw.com

## Mailing Information for a Case 0:09-cv-60646-JIC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Timothy G. Blood**
  tblood@bholaw.com

- **Dane H. Butswinkas**
  dbutswinkas@wc.com

- **Holly M. Conley**
  hconley@wc.com

- **Thomas G. Hentoff**
  thentoff@wc.com

- **Nathan P. Kitchens**
  nkitchens@wc.com

- **Cullin Avram O'Brien**
  cobrien@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Thomas J. O'Reardon , II**
  toreardon@bholaw.com

- **Omar Ortega**
  ortegalaw@bellsouth.net,rdorta@dortaandortega.com,hreyes@dortaandortega.com,mhernandez@dortaandortega.com,oortega@dortaandortega.com,aperez@dortaandor

- **John Bledsoe Patterson**
  john@balkanpatterson.com,tiffany@balkanpatterson.com

- **Robert J. Shaughnessy**
  bshaughnessy@wc.com

- **Brian William Smith**
  bws@smithvanture.com,heather@smithvanture.com

- **Jonathan Matthew Stein**
  jstein@jonathansteinlaw.com,jito@rgrdlaw.com,e_file_sd@rgrdlaw.com,efile@bholaw.com,e_file_fl@rgrdlaw.com,csindac@rgrdlaw.com

- **Eric C. Wiener**
  ewiener@wc.com

**Manual Notice List**

The following is the list of parties who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)