FILED BY_____

2010 OCT -5 PM 12:29

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA-FTL

September 30, 2010

Timothy G. Blood
Blood Hurst & O'Reardon LLP
600 B Street, Suite 1550
San Diego, CA 92101

Jonathon M. Stein
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

Adam Balkin
Balkin & Patterson, LLP
Balkin & Patterson, LLP
601 S. Federal Highway, Suite 302
Boca Raton, FL 33432

Clerk of Court
U.S. District Court
Southern District of Florida
Ft. Lauderdale Division
299 East Broward Boulevard
Room 108
Fort Lauderdale, FL 33301

Thomas G. Hentoff
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Re:   Smith v. Wrigley, Case No. 09-60646 in the United States District Court for the Southern District of Florida

Dear Sirs:

Class member Mary Ann Grabiec ("Objector") hereby objects to the proposed settlement of the above-entitled class action for the following reasons:

THE PROPOSED SETTLEMENT DOES NOT CREATE A COMMON FUND

1.     The Notice states that a $6 million "fund" is being created to pay the claims of class members in amounts between $5 and $10. Furthermore, the Notice advises of an additional $1 million cash fund that will be available if the claims filed exceed the $6 million amount. In fact, the use of the words "settlement fund" is not justified for either of these amounts, as the settlement does nothing more than require Defendant to give security for any and all claims submitted by members of the class in amounts between $5 to $10. If the claims rate in this case holds true to the historical average noted by numerous Federal courts, the amount paid to members of the class will be much less than either $7 million or $6 million in cash. See Sylvester v. CIGNA Corp., 39 F.Supp.2d 34, 52 (D. Me. 2005):

> Unfortunately, when this matter first came before the Court for preliminary approval in July, 2004, the Court was not independently aware (nor did any proponent of the settlement bring to the Court's attention) what the parties and the settlement administrator already

>knew – namely, that the 'claims made' settlements regularly yield response rates of 10% or less.

There is nothing in the facts of this case that would indicate that the claims rate is going to be significantly higher than the historical average. This means that the amount of cash that will be claimed and paid to class members is certainly unknown at this time, and may well be much less than $6 million; indeed, the amount claimed may be **less than** the $2 million in attorneys' fees to be requested.

2. The $7 million in potential cash is clearly not a "fund" for the following reasons:

   a. The last $1 million of said "fund" will never be paid unless claims exceed $6 million (which in all likelihood they will not).

   b. As to the $6 million "fund", no monies will ever be paid except those that are actually claimed through written claim forms received from class members. As to this "cash fund", any unclaimed amount of the **cash** will revert to a charity agreed upon by the Parties. The unclaimed amount of cash should be paid to the class members.

If it were truly a cash fund, the entire $6 million would be distributed among the class members who filed claims.

3. The settlement could, and should, be amended to provide some minimum guaranteed payment, or "floor", that the Defendant will have to pay regardless of the claims rate. If the claims submitted do not reach the floor, then the difference between the amounts claimed and the amount of the floor can be distributed in cash *pro rata* to those who have filed claims; or, that amount of **cash** could be distributed to appropriate *charities in the form of a cy pres,* as was done in the case of Moulton v. U.S. Steel Corp., 581 F.3d 344 (6th Cir. 2009). Objectors suggest that this floor be set at the amount of at least $4 million. This would cause the Defendant to make a known payment amount (actual payment in cash) in consideration for release of the class' claims; it would also constitute an actual cash fund out of which a percentage attorney fee could be awarded.

## IF THE PERCENTAGE OF FUND METHOD IS UTILIZED BY THIS COURT, ATTORNEYS' FEES SHOULD NOT EXCEED 25% OF THE AMOUNT ACTUALLY RECEIVED BY THE CLASS

4. This is a "claims made" settlement, so the only "fund" that can result is the amount of cash that is actually paid to class members who file claims. Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorneys' fees. They do not simply use the amount made available to the class when calculating a percentage attorneys' fee, but they wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. See e.g., In re Compact

<u>Disc Minimum Advertised Price Litig.</u>, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay awarded of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

<u>In re Compact disc Minimum Advertised Price Antitrust Litig.</u>, 292 F. Supp.2d 184 189-90 (D. Me. 2003) (Homby, D.J.).

     5.     The procedure urged by class counsel has been universally rejected by federal courts, and was termed a "fiction" and "pure fantasy" by the Northern District of California. In <u>Yeaglev v. Wells Fargo & Co.</u>, 2008 U.S. Dist. LEXIS 5040 (N.D. al. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorneys' fees:

> Class counsel contends that the Court must consider the amount Wells Fargo could have paid under the settlement in determining the common fund for the purpose of attorney's fees. They argue that under the Ninth Circuit's decision in <u>Williams v. MGM-Pathe Communications Co.</u>, 129 F.3d 1026 (9th Cir. 1997), the court must find that since 3.8 million class members could have made a claim for a free tri-merged credit report, the value of the recovery, that is, the common fund, is at least $114 million ... Williams does not require this court to adopt the fiction that the settlement is worth $114 million ... Williams, in contrast, was a settlement of a securities-fraud class action for $4.5 million in cash ...

> Class counsel's $114 million figure is pure fantasy. Counsel does not offer a shred of evidence that suggests that the parties reasonably believed that Wells Fargo would actually pay anything near that amount, and the Court finds that they did not ... To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the claim members about the importance of credit reports and monitoring their credit ... Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained.

Id. at *20-28. The court in Yeagley went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorneys' fees, a figure that was Approximately one-third of class counsel's claimed lodestar. See also Managing Class Action Litigation: A Pocket Guide for Judges, Federal Judicial Center 2005.

6. The Supreme Court in Boeing Co. v. Van Gernert, 444 U.S. 472 (1980) distinguished its holding in that case from settlements like the one currently before this Court.

> The District Court explicitly ordered that "plaintiffs on behalf of all members of the plaintiff class ... shall recover as their damages herein from the defendants the principal sum of $3,289,359 together with interest ..." **Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims.** Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorneys' fees under the common-fund doctrine.

Boeing, 444 U.S. at 479 n. 5 (emphasis added).

7. This settlement is identical to the one the Supreme Court expressly exempted from its holding in footnote 5 in Boeing. Here, Defendant has agreed to give security against claims filed by class members, up to a maximum of $7 million, but experience shows that much less than that is likely to be claimed.

8. The Sixth Circuit has refused to calculate attorneys' fees on a percentage of the final methodology where no true common fund is created. See Geier v. Sundquist, 372 F.3d 784, 789 (6th cir. 2004). Where a court is purporting to award attorneys' fees under a common fund method, the first inquiry is whether a common fund has been created, and whether attorneys' fees will be taken from that fund. Geier, 372 F.3 at 790. In this case, the answer to both of those questions is no.

9. This case is clearly distinguishable from cases in which any remainder of unclaimed **cash** is paid to a *cy pres* recipient, in **cash,** with the result that no amount of the settlement **cash** reverts to the defendant. See, e. g., Moulton v. U.S. Steel Corp., supra (unclaimed settlement funds paid to public schools). Here, any amount of the **cash** that is not paid to the class through the claims process will revert back into the pocket of Defendant.

10. Ideally, the Court should defer ruling on class counsel's attorneys' fees until the claims deadline, or January 24, 2011. This delay of approximately 3 months after the settlement hearing will be well worth the wait, as it will permit the Court to make an accurate fee award based upon the amount that the class actually receives, rather than the fiction of the "ceiling" agreed to by Defendant, and will insure that class counsel's fee is no more than a reasonable 25% of the total amount paid out by Defendant.

## ANY FEE AWARDED PRIOR TO KNOWING THE SIZE OF THE "FUND" PAID TO THE CLASS MUST BE LIMITED TO A LODESTAR CALCULATION

11. As there is no "settlement fund" that can be accurately quantified prior to knowing the claims data, any fee awarded at this time should be limited to a lodestar calculation. Based on the very recent United States Supreme Court case, Perdue v. Kenny A. ex rel. Winn, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010), the Court should be reluctant to award any multiplier of the lodestar unless a judgment is made that the hourly rates applied are inadequate. Although this recent decision related to a statutory fee award under 42 U.S.C. §1988, Perdue has been interpreted and applied more generally to apply to a class action settlement of this type. In fact, in this very district, Perdue has been applied by U.S. District Court Judge James Gwin to apply to a "claims made" settlement similar to this case:

> As the Supreme Court has recently cautioned, however, courts should hesitate to employ a multiplier, especially when the factors supporting a multiplier have already been considered in the underlying lodestar calculation. Perdue v. Kenny A. ex rel. Winn, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010). Although decided in the context of statutory fee shifting under 42 U.S.C. Section 1988, Perdue nevertheless provides persuasive caution that multipliers must be reserved for 'rare' and 'exceptional' circumstances. Id. Although this Court does not read Perdue to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate.
>
> Shannon Van Horn et al. v. Nationwide Property & Casualty Ins. Co., et al., Case No. 1:08-605 (N.D. Ohio, 2010), Docket No. 308, p. 10.

In that case, which was a claims-made class action settlement, Judge Gwin awarded a lodestar multiplier of approximately 1.2. Any multiplier awarded in this case should not exceed 1.2.

## THE TERMS OF THE PROPOSED SETTLEMENT ARE INADEQUATE AND WORTH MUCH LESS THAN REPRESENTED IN THE NOTICE

12. The proposed settlement is inadequate and misleading for the following reasons:

a. The class consists of **past** purchasers who have either overpaid for the product, or been falsely induced to purchase the product in the first place. Those class members have been financially damaged, and have a clear claim for money damages. The prospective (injunctive) relief will in no way compensate for those damages. The prospective relief benefits only an unknown class of future purchasers. Given that the health claims as to "natural germ killing" etc. are now called into question, it is possible, if not likely, that many of the class members will no longer purchase these products.

Therefore, this prospective relief should not be included in any calculation of benefits being provided to the actual settlement class.

   b. The injunctive relief itself is inadequate, as it is limited to only three years. Given the important nature of these allegations, why will the Defendant be released from these obligations after some artificial, three-year period of time? The injunctions should be permanent.

   c. In effect, the maximum claim will be $10. Even for that $10, you must file a claim form and swear to the truthfulness thereof. Accordingly, nowhere near $6 million is going to be claimed from this "fund". Of course, the $6 million is not a "settlement fund" at all; it is only a guarantee to pay claims up to that amount.

   d. The "extra" $1 million will likely never be paid, because the claims will likely not exceed $6 million.

  13. As the fee petition has not even been filed as of the objection deadline, objector reserves the right to supplement these Objections as to attorneys' fees until such time as the Motion for Fees is filed.

  14. Attached hereto is the Claim Form of Mary Ann Grabiec.

  15. If you have any questions, please contact my attorney Sam P. Cannata (Ohio #0078621), Cannata Phillips LPA, LLC, 9555 Vista Way, Suite #200, Cleveland, Ohio 44125; telephone (216) 438-5091; email samcannata@cannataphillipslaw.com.

Respectfully submitted,

*[signature]*

Mary Ann Grabiec
15729 Valleyview Ave
Cleveland, Ohio 44135
(216) 587-0900

| Must be Postmarked No Later Than January 24, 2011 | Smith v. Wm. Wrigley Jr. Company<br>c/o The Garden City Group, Inc.<br>P.O. Box 9485<br>Dublin, OH 43017-4585<br>Toll-Free: 1 (866) 975-4788<br>Website: www.EclipseSettlement.com | WGL  |
|---|---|---|



Claim Number:   Control Number:   1670143595

7176523
Mary Ann Grabiec
15729 VALLEYVIEW AVE.
CLEVELAND, OH 44135

**REQUIRED ADDRESS INFORMATION OR CORRECTIONS**

If the pre-printed address to the left is incorrect or out of date, OR if there is no pre-printed data to the left, YOU **MUST** provide your current address here:

Name:

Address:

City, State, Zip Code:

## Smith v. Wm. Wrigley Jr. Company
## CLAIM FORM

### You can also file on line at: www.EclipseSettlement.com

If submitting a claim for up to $5.00, you must complete the required information below. If submitting a claim for up to $10.00, you must complete the required information below and sign the Affirmation that you purchased the specified Product(s). All Claim Forms must be postmarked or submitted online by January 24, 2011.

PLEASE NOTE: Any money left over from this settlement will be donated to one or more charities. By not submitting this Claim Form you will make more money available for charitable donation.

If mailing, please return this form to:

Smith v. Wm. Wrigley Jr. Company
c/o The Garden City Group, Inc.
P.O. Box 9485
Dublin, OH 43017-4585

### Class Member Information

NAME: MARY ANN GRABIEC   TELEPHONE OR EMAIL: (216) 276-6563

ADDRESS: 15729 VALLEYVIEW AVE

CITY: CLEVELAND   STATE: OH   ZIP CODE: 44135

**CLAIM FORMS MUST BE POSTMARKED OR SUBMITTED ONLINE BY JANUARY 24, 2011**
QUESTIONS? CALL TOLL-FREE 1 (866) 975-4788 OR VISIT WWW.ECLIPSESETTLEMENT.COM



## Purchase Information

Please provide the following information about the purchases of Wrigley Eclipse® gum or mints with "NATURAL GERM KILLING" for which you seek recovery. If additional space is required, please attach additional pages. If you seek more than $5.00, you may recover up to $10.00 by also signing the Affirmation below.

| Product (Wrigley Eclipse® Gum or Mints) | Dates of Purchases (Month & Year)* | Approximate Dollar Amount Spent | Locations of Purchases (Store, City & State) |
|---|---|---|---|
| WRIGLEY ECLIPSE GUM | 6-2010 | $3.50 | GIANT EAGLE CLEVELAND, OHIO |
| " | 7-2010 | 3.50 | GIANT EAGLE CLEVELAND, OHIO |
| " | 8-2010 | 3.50 | GIANT EAGLE CLEVELAND, OHIO |

\* Purchases must have been made after June 1, 2008.

### Affirmation (if you seek more than $5.00)

UNDER PENALTY OF PERJURY, I AFFIRM THAT I PURCHASED THE LISTED WRIGLEY ECLIPSE® GUM OR MINTS IN PACKAGING WITH A "NATURAL GERM KILLING" MESSAGE IN THE UNITED STATES.

SIGNATURE: _Mary Ann Grahee_    DATE: 9/24/10

**CLAIM FORMS MUST BE POSTMARKED OR SUBMITTED ONLINE BY JANUARY 24, 2011**
QUESTIONS? CALL TOLL-FREE 1 (866) 975-4788 OR VISIT WWW.ECLIPSESETTLEMENT.COM

2